Argued and submitted February 22, judgment in A125237 affirmed; judgment in
A125238 reversed and remanded for trial August 30, 2006

STATE OF OREGON,
*Appellant,*

*v.*

DANIEL GARCIA GARCIA,
*Respondent.*

MI021066; A125237 (Control)

STATE OF OREGON,
*Appellant,*

*v.*

SHAWN MICHAEL JACKSON,
*Respondent.*

MI021067; A125238
(Cases Consolidated)

142 P3d 501

Paul L. Smith, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Tammy W. Sun, Deputy Public Defender, argued the cause for respondents. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.*

BREWER, C. J.

---

\* Ortega, J., *vice* Ceniceros, S. J.

**BREWER, C. J.**

In these two cases consolidated for appeal, each defendant was charged with various crimes on May 8, 2002. Over two years later, on June 3, 2004, the trial court dismissed the charges against each defendant under the statutory speedy trial provisions of ORS 135.747. The state appeals. ORS 138.060(1)(a). We review those rulings for errors of law, *State v. Johnson*, 339 Or 69, 74-87, 116 P3d 879 (2005).[1] We reverse as to defendant Jackson, and affirm as to defendant Garcia.

The facts are undisputed and mainly procedural. Defendants were arrested on May 5, 2002, following a fight involving several people. On May 8, 2002, both defendants were charged by information: Garcia with two counts of fourth-degree assault, ORS 163.160, and one count of second-degree disorderly conduct, ORS 166.025; Jackson with one count of second-degree disorderly conduct, ORS 166.025. Both defendants were arraigned on May 16, 2002.

At the plea hearing on June 20, 2002, both defendants pleaded not guilty, and the trial court set a trial date of October 16, 2002, for Garcia and a trial date of September 25, 2002, for Jackson. The state moved to consolidate the cases for trial. The trial court ordered the cases consolidated, and the parties agreed to use the October 16, 2002, date that had originally been set for Garcia's trial.

When the parties appeared for call before the October 2002 trial date, Jackson's counsel asked for a setover because he was in the middle of a murder trial that he anticipated would continue for several more weeks. Garcia's counsel did not express a position on the request. The state had no objection as long as the cases were tried together. The trial court set a new trial date of January 30, 2003.

When the parties appeared for the second trial date on January 30, 2003, Jackson's counsel again asked for a

---

[1] In its brief, filed before the Supreme Court decided *Johnson*, the state argues that some aspects of rulings under ORS 135.747 are to be reviewed for abuse of discretion. In *Johnson*, the Supreme Court rejected similar arguments. 339 Or at 74-87.

setover because Jackson's wife, who was a witness in both cases, had given birth the night before. The trial court advised the parties that, due to budget constraints, the Chief Justice of the Oregon Supreme Court had ordered that no nonperson misdemeanor proceedings be held between March 1 and June 30, 2003. Accordingly, because Jackson had been charged only with disorderly conduct, trial in his case at least could not be set before July 1, 2003. The state suggested that the cases be severed. Garcia's counsel expressed concern about severing the cases, but ultimately the trial court severed the cases and set two new trial dates: March 19, 2003, for Garcia and July 8, 2003, for Jackson.

At call for the third date set for his trial in March 2003, Garcia failed to appear. A warrant for his arrest was issued, Garcia surrendered himself, and, on June 3, 2003, the warrant was cleared. Garcia's counsel later explained that Garcia had received notice of both his and Jackson's trial dates and had believed that the cases were still consolidated for trial in July 2003.

On May 14, 2003, Jackson moved to reset the third date set for his trial, July 8, 2003, because his attorney would be the only attorney on duty at her law firm at that time, and the firm had other matters set for trial at the same time. At the hearing on that motion, Garcia's counsel appeared and suggested that Garcia's trial be set together with Jackson's new trial date. Finding a new date proved to be difficult. The trial court first proposed August 21, 2003. That date did not satisfy the state because one of its police witnesses was unavailable from August 17 to 30. Next, the trial court proposed June 18, 2003. However, Garcia's counsel was going to be out of town that day. Jackson's attorney indicated that any date before the end of August would not work for him because one of the attorneys in his office would be gone for the month of June. The trial court then observed that the court's July docket was "really full" and that setting trial in August would run the risk of the trial being bumped by an even older case. The trial court proposed September 2, 2003. The state responded that another police witness would be unavailable from September 2 through 12. The trial court then proposed September 17, but a third police witness was unavailable

from September 12 through 17. Finally, the following colloquy occurred:

"THE COURT:   October 2nd? Does that work?

"[PROSECUTOR]:   Works for the State.

"[JACKSON'S COUNSEL]:   Yes.

"[GARCIA'S COUNSEL]:   That is fine with me, Your Honor."

On October 2, 2003, the fourth trial setting, the state reported that it was not ready to proceed because two of its subpoenaed witnesses were not present. The state asked for a continuance. Both defendants' counsel objected to that request, arguing that defendants had already been prejudiced by delay because one witness had moved out of state. The trial court offered the state a choice: dismissal or having arrest warrants issued for the nonappearing witnesses. The state opted for the second alternative, and the trial court issued arrest warrants for the witnesses. At a warrant review hearing conducted the following week, the following colloquy occurred:

"THE COURT:   So what if we set this out for the week of the 16th through the 18th of December, one of those days, like the 16th?

"[PROSECUTOR]: Those dates will work for the State, Your Honor.

"[JACKSON'S COUNSEL]:   Actually, the 18th would work better for myself.

"[GARCIA'S COUNSEL]:   That is fine with me, Your Honor."

On December 16, 2003, at call for the fifth date set for trial, all parties appeared and agreed that the case was ready for trial on December 18. On December 18, however, the trial had to be set over again because one of the judges was ill and older cases had priority for trial that day. The trial court set a new trial date of February 24, 2004.

On January 14, 2004, Jackson moved to reset the sixth date set for trial because he would be out of town running his parents' business until March 14, 2004. The state

did not object, and there is no indication in the record that Garcia took a position on this request. The trial court allowed the motion and set a seventh trial date of May 25, 2004.

In May 2004, both defendants filed motions to dismiss for lack of speedy trial, asserting both statutory and constitutional grounds. After considering extensive arguments on the motions on June 3, 2004, the trial court granted both motions to dismiss under ORS 135.747. As noted, the state appeals.

■        The statutory right to speedy criminal trials is found at ORS 135.747, which provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Even if a defendant is otherwise entitled to dismissal of charges under ORS 135.747, however, the trial court may, in some circumstances, order that the case proceed under ORS 135.750:

> "If the defendant is not proceeded against or tried, as provided in ORS 135.745[2] and ORS 135.747, and sufficient reason therefor is shown, the court may order the action to be continued and in the meantime may release the defendant from custody as provided in ORS 135.230 to 135.290, for the appearance of the defendant to answer the charge or action."

The Supreme Court has recently construed those statutes in several cases: *Johnson*, *State v. Davids*, 339 Or 96, 116 P3d 894 (2005), and *State v. Adams*, 339 Or 104, 116 P3d 898 (2005). In those cases, the court explained that ORS 135.747 and ORS 135.750, when read together, establish the following process for considering a motion to dismiss based on statutory speedy trial grounds. *Johnson*, 339 Or at 87-91;

---

² ORS 135.745 provides:

"When a person has been held to answer for a crime, if an indictment is not found against the person within 30 days or the district attorney does not file an information in circuit court within 30 days after the person is held to answer, the court shall order the prosecution to be dismissed, unless good cause to the contrary is shown."

*Davids*, 339 Or at 101. First, under ORS 135.747, the court must determine the total amount of delay and subtract from that total any periods of delay that the defendant requested or consented to. *Id.* Then, if the state has taken longer than ordinarily expected to bring the defendant to trial, and again applying ORS 135.747, the court must determine if the length of the remaining delay was unreasonable by examining "all the attendant circumstances." *Johnson*, 339 Or at 88. The attendant circumstances include "[c]ircumstances that cause delay (that is, the reasons for delay)," and an assessment of those circumstances generally will drive the determination of whether the delay was reasonable. *Id.* Finally, even if the court has determined that the delay was unreasonable, under ORS 135.750, the court may still allow the case to proceed, but only if the state shows sufficient reason not to dismiss the accusatory instrument. *Id.* at 81 n 9, 90.

■ The total period of delay in each of these cases was 748 days.[3] Each of the two defendants sought or consented to some of that delay. At the threshold, we dispose of the state's argument that defendants are "categorically excluded" from dismissal under ORS 135.747 because they applied for or consented to some delay. The Supreme Court rejected that argument in *Johnson*. 339 Or at 94 ("[A] defendant is not categorically barred from the protections that ORS 135.747 offers because a postponement of trial occurred with the defendant's consent or at the defendant's own instigation."). Accordingly, we turn to the delay sought by defendant Jackson and the reasonableness of the remaining delay with respect to him.

The parties do not dispute, and we agree, that the periods of delay that resulted from trial setovers that Jackson requested should be attributed to him. In order to determine the correct amount of delay to attribute to Jackson, we must

---

[3] We reach a slightly different total number of days of delay than did the trial court, because we use different starting and ending dates. The trial court calculated 749 days of total delay, using the date of defendants' arraignment as its starting point and the date of the hearing on defendants' speedy trial motion as its ending point. We use the date that defendants were charged—May 8, 2002—as the starting point. *Johnson*, 339 Or at 92-93. As for the ending point, we use the last date set for trial, May 25, 2004, assuming for these purposes that defendants would have gone to trial that day, had they not moved to dismiss on speedy trial grounds.

first resolve a factual issue. The trial court found that defendant Jackson consented to delay totaling 233 days in connection with three requests for setovers. Accordingly, the trial court assessed whether a remaining delay of 516 days (or about 17 months) was reasonable. However, as noted above, the parties on appeal agree that Jackson sought *four* trial setovers, resulting in delay attributable to him of either 328 or 339 days.[4] The net delay for Jackson would then be 409 or 420 days (or about 14 months). This discrepancy exists because the trial court was under the impression when it issued its ruling that the setover between October 16, 2002 and January 30, 2003, occurred because Jackson's case was "bumped by another jury trial."

■        Although a trial court's factual findings are generally binding on appeal, that is true only if those findings are supported by the record. *See, e.g., State v. Johnson,* 335 Or 511, 523, 73 P3d 282 (2003). In this case, the record does not support the trial court's finding, but rather confirms what both sides assert on appeal: that Jackson's counsel requested a setover at call for the October 16, 2002, trial date because he was in the middle of a murder trial that would continue for several weeks.[5] Accordingly, the net unconsented delay for Jackson is between 409 and 420 days, or approximately 14 months.[6]

---

[4] Defendants, on appeal, appear to concede that Jackson consented to delay totaling 339 days. The state, on appeal, calculates 328 days. Because it does not affect our analysis, we do not resolve that discrepancy.

[5] We note that the trial court was confronted with a complicated series of events involving two defendants and numerous arguments about which periods of delay should be attributed to each. Moreover, it does not appear that the trial court had available to it the transcripts of the various appearances in which trial setovers were requested. The trial court conscientiously attempted to correctly apportion each period of delay. However, in this instance, its apportionment is not supported by the record.

[6] In its brief, the state argues that some periods of delay not consented to by defendants should be attributed to the state, while other periods should not be attributed to either defendant or the state. As the state conceded at oral argument, that argument was decided against it in *Johnson* and *Davids.* Those cases make clear that, once any periods of delay consented to by a defendant have been subtracted, the entire remaining delay is assessed for reasonableness. *Johnson,* 339 Or at 88-89; *Davids,* 339 Or at 101 (proper focus is on "the period of delay that was beyond defendant's control").

An unconsented delay of 14 months exceeds expectations for bringing a case of this type to trial. *See State v. Brunoe*, 204 Or App 749, 756, 131 P3d 743, *rev den*, 341 Or 245 (2006) (net delay of nearly 12.4 months in misdemeanor case held to exceed expectations); *State v. McCrory*, 201 Or App 663, 667, 120 P3d 495 (2005) (net delay of 20 months in misdemeanor case held to exceed expectations).[7] Accordingly, we will examine "all the attendant circumstances," *Johnson*, 339 Or at 88, in order to determine whether that delay was unreasonable. Again, "attendant circumstances" include the reasons for the delay. *Adams*, 339 Or at 110.

At the outset, we observe that the record in this case does demonstrate reasons for the delay; this is not a case of simple neglect on the state's part. *See Davids*, 339 Or at 101, 103 (delay of 11.5 months between indictment and arrest was unreasonable where it was "the product of simple neglect"). Moreover, we do not believe that the total delay in Jackson's case—14 months—is so excessive that we must shift our focus from the reasons for particular postponements to the period of delay *"in toto." Adams*, 339 Or at 111-12 (shifting focus to total 23-month period of delay that roughly equaled the statute of limitations for the crime at issue).

As noted above, these cases were commenced by information on May 8, 2002. Defendants were arraigned on May 16, a plea hearing was held on June 20, and an initial trial date was set for October 16. That progression, and the total period of about 5.5 months between the charging instrument and the initial trial date, was reasonable.

As also noted above, when Jackson requested a trial setover in January 2003, the trial court set Garcia's new trial date for March 19, 2003. However, due to the deferment of processing of nonperson misdemeanor cases by order of the

---

[7] As in both *Brunoe* and *McCrory*, our conclusion on this point is informed by the Oregon Standards of Timely Disposition adopted by the Oregon Judicial Conference in 1990. Those standards recommend that, in the trial court, "90% of all misdemeanors, infractions and other nonfelony cases should be adjudicated or otherwise concluded within 90 days from the date of arraignment, 98% within 180 days and 100% within one year, except for exceptional cases in which continuing review should occur." *See also State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994) (similarly noting that the standards may inform the analysis under ORS 135.747).

Chief Justice, Jackson's trial date was not set together with Garcia's, but had to be further delayed until July 8, 2003. Accordingly, the period between March 19 and July 8, 2003, can be traced to limitations on judicial resources. Given its reason and length—111 days, or about 3.6 months—that period of delay was not unreasonable. *See Adams*, 339 Or at 110-11 (docket congestion can justify at least some decisions to postpone a trial for a certain length of time). In addition, the setover of the December 2003 trial date can be traced to the trial court's reasonable need to have control over its docket. That trial date had to be set over because one of the circuit court judges was ill and older cases had priority. Given the reason for and length of that delay—68 days, or about two months—that period of delay was also not unreasonable. *See State v. Schneider*, 201 Or App 546, 553-55, 120 P3d 16 (2005), *adh'd to on recons*, 204 Or App 710, 131 P3d 842, *rev den*, 341 Or 392 (2006) (total delay of 12 months and 9 days was not unreasonable where record established that six months of the delay was due to lack of judicial resources, including an insufficient number of judges).

The remaining delay of about 2.5 months is traceable to the state's request for a setover because two of its subpoenaed witnesses did not appear on the October 2, 2003, trial date. Given the relatively brief length of that delay and given that we have already concluded that the majority of the delay in this case was reasonable, even if the state's failure to secure the attendance of its witnesses was unjustifiable, it would not cause us to conclude that the total delay in Jackson's case was unreasonable.

■ Given the circumstances surrounding the various periods of delay, we conclude that the time to bring Jackson's case to trial was not unreasonable as a matter of law. Accordingly, the trial court erred in granting Jackson's motion to dismiss.

■ We next turn to the delay sought or consented to by defendant Garcia and the reasonableness of that delay with respect to him. To reiterate, the total delay in each of these cases was 748 days. The parties do not dispute, and we agree, that Garcia should be deemed to have consented to 78 days of delay between his failure to appear for trial on March 19,

2003, and the date he cleared the ensuing warrant, June 3, 2003. The parties disagree, however, about whether to attribute to Garcia those periods of delay that Jackson requested. Garcia argues that none of those periods should be attributed to him and that, accordingly, the total period of unconsented delay in his case was about 22 months. The state contends that, because the cases were consolidated and because Garcia did not object to Jackson's set-over requests, the periods of delay traceable to Jackson's set-over requests should be attributed to Garcia as well. Applying the state's view, the total period of unconsented delay in Garcia's case would be a little less than 12 months. The trial court rejected the state's argument and did not attribute to Garcia delay that Jackson had sought, with the exception of one period. With respect to the set-over request that Jackson requested in January 2003, the trial court concluded that, by objecting to severance, Garcia impliedly consented to the setover.

■    As the Supreme Court made clear in *Adams*, "consent" in the context of ORS 135.747 means express consent; it does not include mere failure to object. *Adams*, 339 Or at 109 (citation omitted). In *Adams*, the court rejected the state's argument that a statement in the state's application for a setover indicating that the defendant's counsel did not object to the request showed that defendant consented to the delay. *Id.* The court explained:

> "[A] lack of objection is just (and only) that: a lack of objection. It conveys no message that the defendant either joins in the motion or waives any rights that he has that are affected by the motion. * * * [I]n this statutory context, a recital by the state that defense counsel has 'no objection' is insufficient to place a defendant's express consent on the record[.]"

*Id.*

When Jackson requested his first setover before the October 2002 trial date, Garcia's counsel did not express a position. Similarly, when Jackson made his fourth setover request in January 2004, Garcia's counsel took no position. Thus, in connection with two of Jackson's setover requests, there was even less indication of Garcia's position than there was of the defendant's position on the state's set-over request

in *Adams*. Accordingly, Garcia cannot be held to have expressly consented to those periods of delay, as the statute contemplates.

With respect to Jackson's second set-over request in January 2003, Garcia's counsel again did not state a position on the set-over request. As noted, at that point, the trial court severed the cases because Jackson's case, as a nonperson misdemeanor case, could not be processed between March 1 and June 30. The state would have us distinguish this set-over request because "Garcia's attorney specifically objected to severing the trials to allow Garcia's to occur earlier." That objection to severance, in the state's view, constitutes "implicit consent" to Jackson's set-over request. We first observe that, because the statute requires "express consent," it is immaterial whether Garcia "implicitly consented" here. That aside, the record does not support the state's assertion that Garcia objected to severing the trials:

"[PROECUTOR]: And, Your Honor, at this point the state would not object to severing the trials. I spoke with the victim * * * and he has certain concerns that he needs this to go to trial.

"* * * * *

"I don't want to leave him hanging for another five months—six months.

"THE COURT: Okay. So—.

"[GARCIA'S COUNSEL]: Well, Your Honor, it was the state's wish to consolidate—

"[PROSECUTOR]: Right.

"[GARCIA'S COUNSEL]:—these. Now that we have, you know, done a joint defense argument and now they want to sever, is there any way that we could—because mine isn't deferred, still have them both be before July?

"THE COURT: No. Well, actually—

"[PROSECUTOR]: I mean it is the exact same witnesses, Your Honor, and—

"[THE COURT]: I mean I have kind of got my marching orders. I mean it is an order from the Chief Justice. You are absolutely correct. But I can't even [do] a sentence on a case where the sentence is set. I can't even do a dismissal on a case until after—no, I can't do it."

Garcia's counsel did express concern about severing the cases because the defenses had been prepared jointly and tried to explore whether the Chief Justice's order would allow Jackson's case to go forward during the deferment period. By doing so, Garcia did not, implicitly or otherwise, consent to the postponement, but rather, given the court's predetermined decision to postpone, was attempting to facilitate setting a later trial date that best served his interests. Particularly, Garcia's responses conveyed no message that he waived any rights that could be affected by the setover. *See Brunoe*, 204 Or App at 755 (reaching similar conclusion where, in light of predetermined decision to postpone, defendant's counsel responded, "That works," to a proposed new trial date). Accordingly, Garcia did not consent to that continuance for purposes of ORS 135.747.

■ Finally, there remains Jackson's third set-over request in June 2003. At the time of that set-over request, the cases were still severed. Garcia, however, had missed his March 19 trial date. Garcia's counsel appeared at the hearing on Jackson's request and suggested that the trial dates be set together; "thus," according to the state, "agreeing to Jackson's request for set-over." Garcia argues that his suggestion did not indicate consent to the request, but rather reflected a trial strategy of trying to maximize the utility of having already prepared a joint defense. As noted above, the state's underlying argument is premised on imputing the requests of one defendant in a consolidated case to the other defendant. However, at the time that Jackson made this set-over request, the cases were not consolidated. Moreover, once again, anything short of express consent to delay is insufficient under ORS 135.747; Garcia's participation in the hearing on Jackson's set-over request for the limited purpose of facilitating a joint defense does not rise to that level. Accordingly, Garcia cannot be held to have consented to the period of delay traceable to Jackson's third set-over request.

█ Because Garcia did not consent to any delay traceable to Jackson's four set-over requests, the total period of unconsented delay with respect to Garcia is 670 days, or over 22 months. For the reasons stated above with respect to Jackson, that amount of time exceeds expectations for bringing this type of case to trial. 207 Or App at 446. In many cases, we would next assess the reasonableness of the different particular periods of unconsented delay and that is, in fact, what we did with respect to Jackson. 207 Or App at 446-47. Unlike in Jackson's situation, however, the total period of delay in this case approaches the two-year statute of limitations for the crimes with which Garcia was charged. *See* ORS 131.125(6)(b) (setting two-year statute of limitations).[8] Accordingly, our focus shifts to that total period, which, as in *Adams*, is unreasonable *in toto*. 339 Or at 111-12. As the court explained in *Adams*, "a delay that roughly equals the statute of limitations for the crime at issue is too long." *Id.* at 112. Garcia, then, was not brought to trial within a "reasonable period of time" for purposes of ORS 135.747 and was entitled to dismissal of the information.[9]

Judgment in A125237 affirmed; judgment in A125238 reversed and remanded for trial.

---

[8] The same two-year statute of limitations also applies to the crime with which Jackson was charged. However, as we explained above, 207 Or App at 446, the period of unconsented delay in Jackson's case was much shorter—14 months—and we accordingly assessed the reasonableness of each period of delay instead of shifting our focus to the total delay.

[9] The state also argues that, even if Garcia was entitled to dismissal under ORS 135.747, the trial court nevertheless erred by failing to exercise its discretion to continue the case instead of dismissing it under ORS 135.750. As noted, ORS 135.750 allows a trial court to order an action continued even when a defendant would be entitled to dismissal under ORS 135.747 if "sufficient reason therefor is shown." ORS 135.750. However, here, as in *Adams*, "where the trial court granted defendant's motion to dismiss, there is no occasion to consider that additional step." 339 Or at 112 n 110.