Argued and submitted September 27, 2007, resubmitted en banc September 4,
reversed and remanded November 19, 2008, petition for review denied
February 11, 2009 (346 Or 10)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## DALE ROGER DIXON,
*Defendant-Respondent.*

Lincoln County Circuit Court
030695; A126880

197 P3d 1106

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

John L. Susac, Deputy Public Defender, argued the cause for respondent. With him on the brief were Ingrid Swenson, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

SERCOMBE, J.

## SERCOMBE, J.

The state appeals an order dismissing charges of theft in the second degree and criminal mischief in the second degree against defendant for lack of a speedy trial under ORS 135.747. That statute allows dismissal of criminal proceedings when a defendant is "not brought to trial within a reasonable period of time." The trial court concluded that, of the 21-month period of total delay from the initial indictment to the scheduled trial date, seven of those months were requested by defendant, and the remaining 14 months amounted to unreasonable delay. On review for errors of law, *State v. Johnson*, 339 Or 69, 82-86, 116 P3d 879 (2005), we reverse and remand.

The speedy trial issues arise from the following sequence of events. On February 7, 2003, a grand jury indictment of defendant was filed, charging defendant with the felony crime of criminal mischief in the first degree. Defendant was arrested two weeks later. Defendant's March 10 arraignment was continued until July 10—four months later—so that counsel could be appointed. Lack of funds delayed the assignment of court-appointed counsel until July 9.

At the arraignment, the pretrial hearing was set for September 8, 2003. On that day, defendant requested appointment of different counsel. The case was continued until October 1 to allow appointment of a new attorney, and one was appointed. Defendant requested a jury trial, and a pretrial conference was set for January 12, 2004, with trial set for January 29, 2004. The pretrial conference was ultimately continued to January 16, after defendant refused to cooperate with his new attorney and asked to have him removed; the court denied that request.

At the January 16 pretrial conference, the state decided not to proceed on the grand jury felony indictment. Instead, on January 22, 2004, the district attorney filed an "amended information" in place of the original indictment, charging defendant with two misdemeanors: one count of theft in the second degree and one count of criminal mischief in the second degree. Defendant was arraigned on those charges on February 2, 2004.

Before the decision to proceed on new charges was made, the trial was postponed to April 15, because an older criminal case in which the defendant was in custody had priority on the docket. On April 9, defendant filed a motion to continue the trial because he had to attend to his child's medical needs. The trial was continued to September 8, 2004. However, an in-custody case again took precedence, and the court ordered another setover to November 12, 2004. On November 12, defendant moved to dismiss the case under ORS 135.747, and the trial court granted that motion.

The trial court explained its ruling as follows:

"[THE COURT]: * * * It's an October 2002 incident. The Indictment was issued February 6, 2003. The case law shows that the timing of speedy trial motions go from the time of indictment to the time of trial. The warrant for his arrest was issued February 7th * * *. It was issued—it was executed just two weeks later, February 21st of '03—so that's essentially when the meter started running, was February of '03.

"What happened in this case was that this was one of the cases that was subject to [the Budget Reduction Advisory Committee restrictions]. That was the period of time when there was no money to provide court-appointed counsel to indigent defendants until the end of that fiscal two-year period. And that's why the arraignment for March 10th was continued until July 10th because it was anticipated—and it turned out to be true—that after July 1st there would be funding for indigent people. So that's the reason there was a bump. So, essentially, there was a five-month period to start off with that was attributed to a lack of money to provide counsel for [defendant]."

The trial court reasoned that the state, when it chose not to expend resources necessary to bring defendant to trial in a timely fashion, was at fault for that portion of the delay. The trial court stated that the first five months of delay, when defendant was awaiting the appointment of counsel, "count against the State, not against the Defendant."

The trial court then stated:

"The next two months concern me. [Defendant's first attorney] was [appointed] to represent [defendant] on

July 9th. * * * [T]he substitution was because [the attorney] had a conflict. * * *

"The thing that disturbs me here is there was a two-month delay between the appointment on July 9th and the filing of a motion in September to substitute attorneys; and that two-month period goes against the Defendant. * * * [A] conflict should be capable of being determined in less than two months. I mean, either you've got a conflict or you don't. So that two months counts against the Defendant.

"Then, [the second attorney] was substituted so the case was set for early October for a docketing date. And at that proceeding, a plea of not guilty was entered and a trial date was set for January 29th and 30th.

"* * * * *

"Now, that trial ended up not being held because of the * * * custody trial. Again, that's a matter of limited funding of judicial resources * * *."

The trial court then discussed defendant's wish to have his second attorney fired and defendant's own failure to provide a list of witnesses; however, the court acknowledged that the ultimate reason for the continuance from January 29 to April 15, 2004, was because another case had priority. The court stated that the trial set for April was continued at defendant's request, so that time period counted against defendant. The court continued:

"So there's a five-month period of time that does count against [defendant] here. Five months is not an unreasonable length of time for a set-over, so that five months counts against the Defendant. So, you've got two months from July to September of '03; and April to September of '04 that count against him; that's seven months. It's been 21 months since the Indictment was issued, and 21 minus 7 is 14, that's two months too many.

"Now, ironically, if the funding had been there for court-appointed counsel, there wouldn't have been a five-month extra delay, so the math here would have been nine months which would be well within the time permissible to conduct the prosecution. But, again, under [*State v. Adams*, 193 Or App 469, 89 P3d 1283 (2004)], I can't count that five months against the Defendant.

"And the other little twist in this case is the case was a felony for 11 months. It was only until January of this year that an Amended Information was filed, and that reduced the amount of time permissible for the Court to get the case tried again from the felony length to the misdemeanor length; and so that constricted the length of the playing field, if you will."

The trial court went on to discuss the implication of the aspirational standards established by the Oregon Judicial Conference in 1990 that "90% of all misdemeanors, infractions and other nonfelony cases should be adjudicated or otherwise concluded within 90 days from the date of arraignment, 98% within 180 days and 100% within one year * * *." *See State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994). The court "read [applicable case law] to say because it wasn't done within the time—the 12-month time prescribed in 1990, that you're out of luck by whatever margin you exceed the 12 months. For me, this is a—well, anytime something like this happens, it's upsetting."

As to the September to November 2004 setover, just before the case was dismissed, the trial court stated that the continuance occasioned by yet another in-custody defendant was an "issue of limited judicial resources." The court did not count that 67-day period against defendant. The court concluded:

"[V]ery unhappily, I think the law requires me to grant the Motion to Dismiss simply because 14 months is too long. Very, very unpalatable result for me, but I think that's what the law requires."

The trial court applied ORS 135.747, which provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

That remedy of dismissal, however, is tempered by ORS 135.750, which provides:

"If the defendant is not proceeded against or tried, as provided in ORS 135.745 and 135.747, and sufficient reason

therefor is shown, the court may order the action to be continued * * *."

On appeal, the state contends that the trial court erred in the application of those statutes in three respects. First, the state argues that the trial court erred in starting the clock for a "reasonable period of time" to trial under ORS 135.747 too early, from the time of the original indictment rather than the superseding information that was filed on January 22, 2004. Second, the state asserts that the delay in bringing defendant to trial was reasonable under ORS 135.747 because it was partially caused by lack of judicial resources to appoint defense counsel and trial postponements for higher-priority cases. Finally, the state contends that, even if there was an unreasonable delay in bringing defendant to trial under ORS 135.747, the trial court should have considered whether there was "sufficient reason" to grant a continuance under ORS 135.750.

Defendant contends that the trial court correctly granted his motion to dismiss under ORS 135.747. Moreover, defendant asserts that the state's challenge to the trial court's determination that the date of the original indictment was the starting point for calculating the period of time under ORS 135.747 was not preserved. We agree with defendant that the state failed to preserve any contention that the ORS 135.747 calculation in this case begins to run from the time of the second charging instrument. The prosecution made no such argument to the trial court; both parties measured their speedy trial calculations beginning with the February 7, 2003, indictment. Those contentions induced the trial court ruling.

In *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000), the defendant argued that the trial court should have considered a lesser sanction for a discovery violation than exclusion of the defendant's expert witness. The Supreme Court concluded that that argument was not preserved because "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Id.* at 343. In this case, the original indictment was not dismissed, creating some confusion about any

lingering effect of those charges. The state's failure to anchor its statutory speedy trial timeline to the date of the information charging instrument added to that confusion and induced the trial court's ruling. That unpreserved argument cannot be pursued for the first time on appeal. *See State v. Jackson*, 212 Or App 51, 55-56 n 4, 157 P3d 239, *rev den*, 343 Or 206 (2007) (preservation required for argument on particular application of statute to facts).

We turn, then, to the state's argument that the trial court erred in applying ORS 135.747 to the facts in this case. Following the trial court ruling, the Supreme Court decided three statutory speedy trial cases: *State v. Adams*, 339 Or 104, 116 P3d 898 (2005); *State v. Davids*, 339 Or 96, 116 P3d 894 (2005); and *Johnson*, 339 Or 69. We distilled the teaching of those cases in *State v. Garcia/Jackson*, 207 Or App 438, 142 P3d 501 (2006) and stated:

> "In those cases, the court explained that ORS 135.747 and ORS 135.750, when read together, establish the following process for considering a motion to dismiss based on statutory speedy trial grounds. First, under ORS 135.747, the court must determine the total amount of delay and subtract from that total any periods of delay that the defendant requested or consented to. Then, if the state has taken longer than ordinarily expected to bring the defendant to trial, and again applying ORS 135.747, the court must determine if the length of the remaining delay was unreasonable by examining 'all the attendant circumstances.' The attendant circumstances include '[c]ircumstances that cause delay (that is, the reasons for delay),' and an assessment of those circumstances generally will drive the determination of whether the delay was reasonable. Finally, even if the court has determined that the delay was unreasonable, under ORS 135.750, the court may still allow the case to proceed, but only if the state shows sufficient reason not to dismiss the accusatory instrument."

*Id.* at 443-44 (citations omitted).

Applying those principles to this case, there was a delay of slightly more than 21 months between the February 7, 2003, indictment and the scheduled November 12, 2004, trial. The application of ORS 135.747 first requires a deduction of any period of delay consented to by defendant from the

total period of delay. The net period of time is then assessed as reasonable or not. *State v. Schneider*, 201 Or App 546, 552, 120 P3d 16 (2005), *adh'd to on recons*, 204 Or App 710, 131 P3d 842 (2006). Defendant consented to five months of the 21-month delay in obtaining a continuance of the trial date from April 15 to September 8, 2004. The trial court decided that the five-month setover was "not an unreasonable length of time." The trial court also found that defendant consented to a two-month delay from July 10 to September 10, 2003, the time for determining that a conflict of interest existed with defendant's first attorney. Thus, the "period of time" to be assessed as reasonable or not under ORS 135.747 is 14 months.

■ A 14-month delay is greater than would be expected to resolve misdemeanor charges against defendant. *See Garcia/Jackson*, 207 Or App at 446 (stating that a 14-month delay in a misdemeanor case "exceeds expectations"). Consequently, it is necessary to assess whether that 14-month delay was "reasonable." As noted in *Garcia/Jackson*, whether a delay is reasonable involves an examination of the "attendant circumstances," which includes the "reasons for delay." *Johnson*, 339 Or at 88.

■■ Docket congestion justifies some delay in bringing a defendant to trial, although such a delay will, at some point, become unreasonable. *Adams*, 339 Or at 111 (23 months' delay in a DUII case was too long to be reasonable, even assuming that it was occasioned by an overcrowded docket). For docket congestion to justify a delay in bringing a defendant to trial, the record in a case must demonstrate precisely how an overcrowded docket contributed to the period of delay at issue. *Johnson*, 339 Or at 89. "At some point," however, "the focus must shift away from whether the various * * * decisions *individually* are justifiable to whether the overall period of time to bring the defendant to trial is 'reasonable' *in toto*." *Adams*, 339 Or at 111-12 (emphasis in original).

■ In this case, the attendant circumstances include six separate delays that contributed to the 14-month period. None of them was unexplained; the reasons for each one were clearly set out in the record. In each instance, the delay was not prompted by a request of the prosecution; rather, each

delay was the result of a decision of the trial court itself. None of the delays was the result of neglect on the state's part. *See Davids*, 339 Or at 101 (delay unreasonable where it was "the product of simple neglect"). Eight months of the total period of delay was caused by docket congestion and limited judicial resources—specifically, a shortage of judges and the need to try higher priority cases (January 26 to April 9, 2004, and September 3 to November 12, 2004), and a temporary short-age of legislative funding for the indigent defense program (March 10 to July 9, 2003, period of arraignment postpone-ment). The remaining six months arose out of routine delays—specifically, one month from indictment to arraign-ment, a one-month delay to appoint substitute counsel, and a four-month delay from the first court appearance to the first scheduled trial date.

Our opinion in *Garcia/Jackson* provides guidance in evaluating the justification for the delays in this case. There, we determined that a 14-month delay in bringing one of the defendants to trial on a misdemeanor charge was not "so excessive that we must shift our focus from the reasons for particular postponements to the period of delay *in toto*." *Id.* at 446 (internal quotation marks omitted). Instead, we assessed the reasonableness of each particular delay. *Id.* at 446-47. Nearly four months of the total 14-month delay resulted from "the deferment of processing of nonperson mis-demeanor cases by order of the Chief Justice" during the same legislative appropriation deficit that caused the lack of indigent defense funding. *Id.* We characterized that delay as one that "can be traced to limitations on judicial resources" and that, given its reason and length, was not unreasonable for purposes of ORS 135.747. *Id.* at 447 (also concluding that a two-month court setover due to judge's unavailability due to illness and older cases taking priority was not unreasona-ble). We concluded that, because all but two and one-half months of the delay was traceable to limited judicial resources, the defendant was brought to trial within a reasonable period of time. *Id.*

This case is materially indistinguishable from *Garcia/Jackson*. The total delay in that case was 14 months, precisely the same total delay that occurred in this case. As in

*Garcia/Jackson*, in this case, none of the delay is unexplained; rather the reasons for each delay are clearly articulated in the record. As in *Garcia/Jackson*, in this case, four months of the total delay resulted from a shortage in legislative appropriations for indigent defense. And, as in *Garcia/Jackson*, the relevant delay in this case is traceable to limited judicial resources, with little or none of that delay attributable to the prosecution.

Given the attendant circumstances in this case, we conclude that the time to bring defendant's case to trial was not unreasonable as a matter of law under ORS 135.747. The trial court erred in granting defendant's motion to dismiss.

Reversed and remanded.