Argued and submitted August 20, 2013, reversed and remanded May 29, petition for review denied October 23, 2014 (356 Or 400)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## JAMES LOWELL ELLIS,
*Defendant-Respondent.*

Washington County Circuit Court
C112084CR; A151823

328 P3d 720

Karla H. Ferrall, Assistant Attorney General, argued the cause for appellant. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Elizabeth Daily, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and De Muniz, Senior Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

In this criminal case, the trial court granted defendant's motion to dismiss for lack of a speedy trial based on *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1.[1] The state appeals the ensuing judgment. ORS 138.060(1). The state argues that the trial court incorrectly calculated the period of delay and that the correctly calculated period of delay was reasonable. We review for errors of law. *State v. Johnson,* 339 Or 69, 82-87, 116 P3d 879 (2005); *State v. Purdom,* 218 Or App 514, 516, 180 P3d 150 (2008). Because we conclude that the delay in bringing defendant to trial was reasonable, we reverse and remand.

Under *former* ORS 135.747,

"[i]f a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Thus, after unreasonable delay that a defendant has not applied for or consented to, the defendant is generally entitled to dismissal under *former* ORS 135.747.

We review a trial court's decision on a motion to dismiss brought under *former* ORS 135.747 using a two-step analysis. We first determine the total amount of delay and subtract from that total any periods of delay that occurred "upon the application * * * or by the consent of the defendant." We then determine whether the remaining period of delay was reasonable. *State v. Glushko/Little,* 351 Or 297, 305, 266 P3d 50 (2011) (citing *State v. Davids,* 339 Or 96, 100-01, 116 P3d 894 (2005)). When the state takes longer than ordinarily expected to bring a defendant to trial, the circumstances that caused the delay will generally determine whether the delay is reasonable. *Davids,* 339 Or at 101; *Johnson,* 339 Or at 88.

---

[1] The 2013 Legislative Assembly repealed ORS 135.747 "on April 1, 2014." Or Laws 2013, ch 431, § 1. That repeal "appl[ies] to all criminal proceedings, regardless of whether the case is pending on or the prosecution was initiated before April 1, 2014." Or Laws 2013, ch 431, § 4. As explained in *State v. Straughan (A147718),* 263 Or App 225, 231-35, 327 P3d 1172 (2014), we conclude that the repeal of *former* ORS 135.747 does not affect this appeal.

The parties' dispute implicates both steps of the statutory speedy trial analysis. As to the total period of delay, the parties disagree about the starting date for that calculation. The total period of delay begins when a defendant is charged and ends on the last date set for trial. *See State v. Garcia/Jackson,* 207 Or App 438, 444 n 3, 142 P3d 501 (2006). As the Supreme Court has explained, "trial delay becomes an issue when a defendant is charged." *Johnson,* 339 Or at 92 (emphasis omitted). In this case, the parties dispute when defendant was "charged" for purposes of the speedy trial analysis. They also disagree about whether the net period of delay in this case—however measured—was reasonable.

The principal facts are largely procedural and undisputed. In December 2010, police officers responded to a report of possible drunk driving, found defendant passed out behind the wheel of his still-warm car, and arrested him. Three criminal cases were initiated, more or less sequentially, charging defendant with crimes in connection with those events.

<u>Case number D110059M:</u> On January 10, 2011, the state filed a complaint charging defendant with misdemeanor driving under the influence of intoxicants (DUII) and three other misdemeanor crimes. The state later became aware that defendant had been convicted of DUII twice within the past 10 years. The state accordingly voluntarily dismissed the complaint in order to charge defendant with felony DUII under ORS 813.011.[2] An order of dismissal was filed on April 28, 2011, and entered on May 2, 2011.

<u>Case number C110904CR:</u> On April 29, 2011, the state filed an indictment charging defendant with felony DUII and the same previously charged misdemeanor crimes. Trial was set for several dates, and the parties agree that, except for one 27-day continuance, defendant did not apply for or consent to any period of delay for purposes of *former* ORS 135.747. In September 2011, the state realized that "the

---

[2] Under ORS 813.010(4), DUII is a Class A misdemeanor. However, under ORS 813.011(1), adopted by the voters as Ballot Measure 73 (2010), DUII is a Class C felony if the defendant has been convicted of DUII at least two times in the 10 years prior to the date of the current offense.

language in the indictment was wrong," and so the state obtained a new indictment in a new case (C112084CR, as described below). In November 2011, the indictment in case number C110904CR was dismissed.

Case number C112084CR: Before the indictment in case number C110904CR was dismissed, on September 26, 2011, the state filed a new indictment charging defendant with the same crimes. Trial was set for November 30, 2011, but, on the call date for that trial, the court reset the trial for March 13, 2012, because no judges were available. Again, on the call date for that trial, the court reset the trial for May 22, 2012, because no judges were available. Defendant moved for dismissal on the ground that the delay bringing him to trial was unreasonable.

The trial court considered defendant to have been "charged with a crime" for purposes of *former* ORS 135.747 when case number D110059M was initiated by complaint in January 2011. The trial court reasoned, "[W]e're really looking at the very same case continuing from January 11th, with the same fact pattern continuing from January 11th, 2011, until today." Accordingly, the total period of delay considered by the trial court was about 16.5 months. The court determined that defendant had consented to a 27-day delay by requesting a continuance and accordingly subtracted 27 days from the total period of delay.[3] Concluding that the net period of delay—about 15.5 months—was unreasonable, the court granted defendant's motion to dismiss.

The state contends that the operative "charge" for purposes of the speedy trial analysis is the September 26, 2011, reindictment. Defendant, however, contends that he was "charged" for purposes of the speedy trial analysis when the complaint was issued on January 10, 2011. Thus, in the

_____

[3] The trial court observed that defendant had challenged the impartiality of two judges before the last continuance for "no judges." Because it was possible that those judges might have been available for trial had defendant not challenged them, the trial court questioned whether it might be appropriate to attribute the delay related to that final continuance to defendant. However, because the availability of those judges was not clear from the record, the trial court did not subtract the period of the final continuance from the total period of delay. On appeal, the state concedes that any delay related to the final continuance should not be subtracted from the total period of delay.

state's view, the total period of delay was about eight months; whereas in defendant's view, the total period of delay was about 16.5 months.

As we elaborate below, we have held that, when one or more accusatory instruments have been dismissed, the speedy trial calculation begins with the latest accusatory instrument; by contrast, we have held that, when the same kind of accusatory instrument in the same case has been amended, the speedy trial calculation begins with the original accusatory instrument. The state contends that, here, several accusatory instruments were filed and dismissed in different cases and, accordingly, we should begin the speedy trial calculation with the latest accusatory instrument. In defendant's view, on the other hand, it is appropriate to start the speedy trial calculation from a new accusatory instrument only if it is obtained after the old accusatory instrument was dismissed. In this situation, however, the prior accusatory instruments had not been dismissed before the new ones were issued. Accordingly, defendant urges us to treat his situation like a single case involving multiple amended accusatory instruments and begin the speedy trial calculation with the original accusatory instrument.

For the reasons that follow, we conclude that defendant was "charged," for purposes of *former* ORS 135.747, at the earliest, on April 29, 2011, when the first indictment was filed. Moreover, because we conclude that the net unconsented delay between that date and May 22, 2012, the final date set for trial, was reasonable, we reverse.

In considering when a defendant is "charged" for speedy trial purposes, we have generally drawn a distinction between situations involving serial accusatory instruments, dismissals, and recharging and those involving sequential, amended charging instruments. In the former, we have held that a defendant is considered "charged" when the state obtains the accusatory instrument in the most recent case. *E.g.*, *Purdom*, 218 Or App at 523. In the latter, we have held that a defendant is considered "charged" when the state obtains the first accusatory instrument. *State v. Davis*, 236 Or App 99, 108, 237 P3d 835 (2010).

In *Purdom*, the defendant was initially arraigned on an information on controlled-substances charges. A month later, in the same case, the defendant was indicted on the same charges. The day before trial, the state reindicted the defendant with a superseding indictment; the charges were the same, but the allegations were slightly different.[4] On the day of trial, the defendant objected to the superseding indictment, and the trial court dismissed it without prejudice. 218 Or App at 516. Later that same day, the state again indicted the defendant in a new case but on the same charges as in the previous case. At his arraignment in the new case, the defendant moved to dismiss on speedy trial grounds. In granting the motion, the trial court calculated the period of delay from the information in the original case, reasoning that "[i]t is the exact same set of facts and circumstances [as in the original case]; that's why I dismissed [the second case]." *Id.* at 517 (internal quotation marks omitted).

On the state's appeal, we reversed. We observed that we had previously construed *former* ORS 135.747 in cases in which an initial charge is dismissed and another charge is filed and concluded that "the date that the charge was reissued following the first dismissal is the starting point for calculating the length of time to bring a defendant to trial." *Id.* at 519. We concluded that, for purposes of *former* ORS 135.747, the case was commenced with the indictment in the second case and that the trial court accordingly erred in dismissing the indictment. *Id.* at 523.

*State v. Schneider*, 201 Or App 546, 120 P3d 16 (2005), *adh'd to on recons*, 204 Or App 710, 131 P3d 842, *rev den*, 341 Or 392 (2006), is similar to *Purdom*. In *Schneider*, the defendant was cited, but the state soon dismissed the citation and filed a complaint including eight misdemeanor counts. The state later dismissed the complaint as well, and obtained a grand jury indictment on the same eight counts. We rejected the defendant's suggestion that the speedy trial calculation should have begun with the date of the citation. Again, we noted that we had previously held that, under *former* ORS 135.747, the date that a charge is reissued following a dismissal is the starting point for the speedy trial calculation.

---

[4] *Purdom* does not elaborate on the differences in the allegations.

*Schneider*, 201 Or App at 551. Accordingly, we concluded that the "starting date" for statutory speedy trial purposes was the date of the final accusatory instrument, *viz.*, the indictment. *Id.* at 551-52; *see also State v. Bayer*, 229 Or App 267, 278, 211 P3d 327, *rev den*, 347 Or 446 (2009) (where state cited the defendant for DUII, dismissed citation, and then filed an information charging DUII, the defendant was "charged" for speedy trial purposes when the information was filed).

By contrast, in *Davis*, 236 Or App 99, the state charged the defendant by information in November 2006. Later that month, the state filed an amended information that was identical to the original, except that the caption on Count 1 was changed to indicate that the defendant had been charged with possession of a Schedule III, rather than a Schedule II, controlled substance. In April 2007, the state filed a second amended information that changed the text of Count 1 to identify the controlled substance as a Schedule III drug. Finally, in April 2008, on the date of trial, the state filed a third amended information that changed the dates alleged in Count 1 to match the dates alleged in Counts 2 and 3. We rejected the state's argument that we should apply *Purdom* and conclude that defendant was not "charged" for speedy trial purposes until the second (or even the third) amended indictment. We explained:

"[In *Purdom*,] we held that, when the state dismisses one charging instrument and subsequently files another, the prosecution begins with the second charging instrument for purposes of calculating the starting date for the period of delay under ORS 135.747. [Here, t]here was no dismissal of any information in this case; the same information was continued with very slight changes, and the rule in *Purdom* does not apply."

*Davis*, 236 Or App at 108.

Thus, we have addressed two scenarios: When one accusatory instrument is dismissed and a new accusatory instrument is issued, the speedy trial delay period is measured from the most recent accusatory instrument. However, when there is no dismissal, and the same kind of accusatory

instrument is amended in relatively minor ways, the speedy trial delay period is measured from the first accusatory instrument.

This case has some elements of both scenarios. As to the dismissal of the complaint and recharging by indictment in a new case, this case is like *Purdom* and *Schneider*. As in those cases, the state dismissed one accusatory instrument and recharged defendant by another accusatory instrument. As in *Schneider*, the accusatory instruments were different in kind. Moreover, here, we think that the change from misdemeanor to felony charges is meaningful. *Former* ORS 135.747 was intended to be a docket-clearing mechanism. *State v. Emery*, 318 Or 460, 467, 869 P2d 859 (1994) (observing that the purpose of the speedy trial statute is to "provide[] a method for dismissing cases that are languishing in the criminal justice system without affecting the state's ability to reprosecute serious charges"). When the state dismisses misdemeanor charges in one case and initiates felony charges in a new case—even when the case involves almost identical facts and similar charges—the prosecution cannot be viewed as languishing on a docket. Accordingly, when the state dismissed the information and obtained an indictment, the indictment marked the beginning of the speedy trial delay period for the felony charges that defendant ultimately faced.

Defendant remonstrates that we should not consider the indictment as marking the beginning of the period of delay because the state did not dismiss the complaint before it obtained the indictment. Defendant correctly observes that we have stated in several cases that the speedy trial period begins with an accusatory instrument obtained "following the dismissal" of a previous accusatory instrument. *Purdom*, 218 Or App at 519; *Schneider*, 201 Or App at 551. He contends, in light of that phrase, that the period of delay should be measured from a new accusatory instrument *only when* the previous accusatory instrument has been dismissed before the new accusatory instrument is issued. Defendant places more weight on that phrase than it can bear. It may be that, most typically, a new accusatory instrument will not issue until after the previous one

was dismissed, and, accordingly, the cases in which we used that phrase merely reflect that usual order of events. In no statutory speedy trial case of which we are aware, however, have we addressed expressly the effect of a new accusatory instrument being issued before the previous accusatory instrument was dismissed. Thus, the "following the dismissal" phrase is, at most, *dictum*. In this case, we hold that, when a defendant is ultimately brought to trial on felony charges, the speedy trial delay period is not measured from any earlier, misdemeanor accusatory instrument.[5]

This case is also somewhat like *Davis*, however, in that it involves a series of the same kind of accusatory instrument. In this case, for reasons not explained in the record, the state obtained a new indictment in a new case when it realized that it had not used the correct wording in light of newly effective Ballot Measure 73. It is not clear why the state could not have amended the first indictment instead of seeking a new one.[6] If the state could have simply amended the indictment, it would be appropriate, as in *Davis*, to measure the beginning of the speedy trial period from the first indictment. On the other hand, if the state had no choice but to dismiss the original indictment and obtain a new one, then the situation is more like *Purdom*, in which we held that a new—and presumably meaningfully different—indictment required the restarting of the speedy trial clock, and the speedy trial delay period would be measured beginning with the second indictment.

---

[5] We observe that defendant's argument may fail for another reason, that is, that the complaint was dismissed before the indictment was issued. The order of dismissal in case number DM110059M was filed on April 28, 2011, and entered on May 2, 2011. The indictment in case number C110904CR is dated April 26, 2011, and was filed on April 29, 2011. The OJIN report for case number C110904CR indicates that the "case filed date" was April 29, 2011, but that the "case started date" was May 2, 2011. Defendant was arraigned in that case on May 2, 2011. If the filing of the order of dismissal and the filing of the indictment are the operative dates, then defendant's argument would fail because the dismissal of the complaint here (April 28, 2011) occurred before the initiation of the case by indictment (April 29, 2011). We need not resolve in this case which are the operative dates.

[6] The state explained only that "[w]e essentially hadn't quite figured out how the wording on a Measure 73 DUII [charging instrument] needed to be at th[e] point when the initial indictment was done." The trial court observed, "I don't know whether there was truly a language problem or not, or if it couldn't have been amended or somehow taken care of; I don't know."

We need not resolve the question of whether to start the speedy trial calculation in this case with the first or the second indictment, however, because we conclude that, even measured from the first indictment, the period in which defendant was brought to trial was reasonable. The first indictment was filed on April 29, 2011, and the last date set for trial was May 22, 2012. From that total period of about 13 months, we subtract the 27-day continuance that defendant applied for or consented to, leaving a net period of delay of about 12 months.

There is no precise formula for determining whether a particular period of delay is reasonable. In making that determination, courts weigh several factors, including the length of the net unconsented delay, the reasons for the delay, and the length of any unexplained delay. *See State v. Myers*, 225 Or App 666, 674, 202 P3d 238, *rev den*, 346 Or 184 (2009). The longer the total delay is, the shorter any unjustified portion may be. *Id.* at 677. Even if individual delays are justified, however, at some point the total length of delay may become unreasonable. *State v. Adams*, 339 Or 104, 111-12, 116 P3d 898 (2005). We have noted that delays due to discovery violations or the convenience of prosecutors weigh more heavily in the balance than do delays necessitated, for example, by unforeseen illness of witnesses or unavoidable docket congestion. *Davis*, 236 Or App at 110 (citing *State v. Allen*, 234 Or App 243, 256, 227 P3d 219 (2010)).

As to the length of the net unconsented delay, this case is close to being within "reasonable expectations" for bringing a felony case to trial. We frequently refer to the Oregon Standards of Timely Disposition, adopted by the Oregon Judicial Conference in 1990, for guidance in determining whether a particular length of time is longer than ordinarily expected to bring a defendant to trial for the charged offense. *See, e.g., State v. Cunningham*, 232 Or App 135, 143 n 2, 221 P3d 165 (2009); *Myers*, 225 Or App at 678. Those standards provide that, with respect to both felonies and misdemeanors, all cases should be "adjudicated or otherwise concluded" within one year "except for exceptional cases in which continuing review should occur." Oregon Standards of Timely Disposition in Oregon Circuit Courts,

Oregon Judicial Conference (reapproved Apr 7, 1999). Here, the net unconsented delay was 12 months. Although defendant was charged with four crimes—felony DUII and three related misdemeanors—there is no indication that the case was particularly complex, involved an unusual number of witnesses, required the resolution of significant or novel questions of law, or would otherwise have required a longer-than-average trial preparation period. Accordingly, we conclude that the net period of delay was somewhat more than would ordinarily be expected for a case of this nature.

With respect to the various periods of delay, as noted, defendant was indicted on April 29, 2011. He was arraigned on May 2, 2011, and a May 16, 2011, pretrial conference was set. On May 17, 2011, defendant moved for a continuance, and trial was set in June 2011.[7] On June 13, 2011, the trial was again continued; the new trial date was September 13, 2011. The record does not reveal the reason for that continuance.[8] In September 2011, the state informed defendant of its intention to seek a new indictment that conformed to Ballot Measure 73; as noted, that indictment was filed, initiating case number C112084CR, on September 26, 2011. Before that indictment was filed, on September 15, 2011, a new trial date of November 30, 2011, was set in case number C110904CR. The record does not reveal the reason for that continuance. The November 30, 2011, trial date was carried over into case number C112084CR. At call for that trial date, November 23, 2011, the indictment in case number C110904CR was dismissed on the state's motion. Also

---

[7] The parties and the trial court appear to have understood that this continuance was granted to June 13, 2011, resulting in a 27-day period of delay to which defendant consented. The trial court file from case number C110904CR is not part of the record on appeal, but from the OJIN report of that case attached to defendant's opening brief, it appears that, on May 17, 2011, trial was set for June 28, 2011. We would normally consider defendant to have consented to the period of delay between his motion to continue and the new trial date. *See, e.g., Adams,* 339 Or at 110; *Garcia/Jackson,* 207 Or App at 444-45. However, the difference between a 27-day period of delay and a 42-day period of day are not material to our analysis, and so we only note this possible discrepancy in passing.

[8] That continuance was granted in case number C110904CR. As noted, the trial court file in case number C110904CR is not part of the record on appeal. At the hearing on defendant's motion to dismiss, in connection with this period, the prosecutor said, "I think that was attributed to the court." An OJIN entry for June 13, 2011, reads, "Set-Over Def."

on November 23, 2011, the trial court set over the trial "at request of court - no judges" to March 13, 2012. At call for that trial date, the trial court again set over the trial "at request of court - no judges" to May 22, 2012. On May 22, 2012, the trial court granted defendant's motion to dismiss on statutory speedy trial grounds.

We now turn to the reasons for each period of delay. (1) April 29 to May 17, 2011 (18 days). This period spans the initiation of the case to when defendant moved for a continuance. During that period, the trial court set a pretrial conference and the case was being actively pursued by the state. That period of delay is reasonable. (2) May 17 to June 13, 2011 (27 days). As noted, this period of delay was requested by defendant. (3) June 13 to September 13, 2011 (92 days). As noted, this period of delay is unexplained on this record. (4) September 13 to November 30, 2011 (78 days). As noted, this period of delay is unexplained on this record. (5) November 30, 2011 to March 13, 2012 (104 days). This period of delay was due to an insufficient number of judges. (6) March 13 to May 22, 2012 (70 days). This period of delay was again due to an insufficient number of judges.

Overall, this case entails a period of about 12 months of net unconsented delay. The first 18 days of that period is the reasonable and unremarkable amount of time between the filing of the first indictment and the initial pretrial conference. Of the remaining period—a little more than 11 months—about 6 months was due to continuances of trial necessitated by an insufficient number of judges.

In *Schneider*, we held that net unconsented delay of 12 months and nine days in a DUII case was not unreasonable in light of the uncontested justification for six months of the delay, namely the unavailability of judges. 201 Or App at 555-56; *see also Garcia/Jackson*, 207 Or App at 447 (net unconsented delay of 14 months, including 5.6 months of delay attributable to limitations on judicial resources, was not unreasonable). The delays in this case are comparable to the delays found to be reasonable in *Schneider*.

In some cases, we have required a more detailed demonstration of either the systemic reasons in a particular judicial district that could have led to an insufficiency

of judges on a particular trial date or the particular reasons that lack of judicial resources required continuing a specific trial date. Generally in those cases, however, either the total period of delay or the particular periods attributed to lack of judicial resources—or both—were much longer than the 12 and 6 months, respectively, in this case. *See, e.g., State v. Coburn*, 254 Or App 36, 292 P3d 640 (2012) (18.5 months of net unconsented delay, 14.5 months of which were attributed to lack of judicial resources); *State v. Bellah*, 242 Or App 73, 252 P3d 357 (2011) (26 months of net unconsented delay, 12.75 months of which were attributed to lack of judicial resources); *State v. Lee*, 234 Or App 383, 228 P3d 609, *rev den*, 348 Or 523 (2010) (17.5 months of net unconsented delay, 10 months of which were attributed to lack of judicial resources); *Myers*, 225 Or App 666 (18 months of net unconsented delay, 11 months of which were attributed to lack of judicial resources).

Although it is preferable for the trial court to document the particular circumstances that connect lack of judicial resources to particular delay periods or reasons why a particular case could not be reset for trial sooner, in this case, we are satisfied that the approximately six months of delay attributed to insufficient judges was reasonable. Significant to that conclusion are the following: the net unconsented delay did not significantly exceed what would be ordinarily expected; the particular trial continuances attributed to a lack of judges were not long (four and two months, respectively); the second continuance was much shorter than the first (supporting an inference that the court prioritized the case for resetting the second time); and the case appears to have been actively managed by both the prosecution and the trial court.

In sum, this case involves a relatively short period of net unconsented delay, six months of which was attributable to reasonable and relatively brief continuances related to the lack of judicial resources. Accordingly, defendant was brought to trial within a reasonable amount of time for purposes of *former* ORS 135.747.

Reversed and remanded.