Submitted October 31, affirmed December 12, 2012

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**LAURA KAY COBURN,**
*Defendant-Appellant.*

Josephine County Circuit Court
07CR0454; A145768

292 P3d 640

Pat Wolke, Judge.

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Christina M. Hutchins, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals her convictions after a jury trial for felony possession of methamphetamine, ORS 475.894, and misdemeanor child endangerment, ORS 163.575. Defendant asserts that the trial court erred by denying her motion to dismiss based on a violation of her statutory right to a speedy trial under ORS 135.747.[1] Defendant contends that the approximately 18.5-month delay attributable to the state in this case was unreasonable. Because the state adequately explained the reasons for the delay attributable to it, and that delay was reasonable, we affirm.

The trial court made the following findings of fact in its letter opinion denying defendant's motion to dismiss, and we are bound by those findings because there is evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Defendant was arraigned in Josephine County Circuit Court on August 6, 2007, and, after a change of attorneys that she requested, was given a plea hearing date of October 8, 2007. Before that hearing could take place, defendant requested another change of attorney, and, after a third attorney had been appointed, defendant failed to appear at a status hearing set for December 3, 2007. Based on that failure to appear, the court issued a warrant for defendant's arrest and continued the case. Defendant did appear at a further status hearing on January 7, 2008, and she requested a trial.

Initially, the trial was set for March 13, 2008, but it was set over by the court because no judges were available. A second trial date of July 23, 2008, was set over at the state's request because a law enforcement witness was unavailable. A third trial date was set for September 30, 2008, but after her motion to allow a witness to testify by telephone was denied, defendant requested a set over and a fourth trial date was set for March 19, 2009. Defendant failed to appear for that trial date, and the court issued a

---

[1] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

warrant for her arrest. A fifth trial date was set for May 21, 2009, but was set over by the court because no judges were available; a sixth trial date of September 3, 2009, also was set over for the same reason. A seventh trial date was set for January 6, 2010, but was set over because defendant's attorney was not available. Defendant ultimately was tried on March 18, 2010.

Before trial, defendant moved to dismiss the charges based on an asserted violation of her statutory speedy trial right. After an evidentiary hearing, the trial court found that, of the 951 days of cumulative delay in the case, 566 days were attributable to the state and 385 days were attributable to defendant. In particular, the trial court found that defendant was responsible for the 153 days of cumulative delay between August 6, 2007, and January 7, 2008, because, during that period, defendant had repeatedly requested new counsel and had failed to appear at a status hearing, causing a warrant to be issued and the case to be continued. The trial court also attributed the 232 days of cumulative delay between September 30, 2008, and May 21, 2009, to defendant because she had moved for a continuance after the court denied her motion for telephonic testimony and then had failed to appear for trial, again causing a warrant to be issued.

The trial court then analyzed the periods of cumulative delay that it attributed to the state. The court attributed to the state the 267 days of cumulative delay between January 7, 2008, and September 30, 2008, because the state had moved for a continuance when a law enforcement witness was unavailable. The court then attributed the 299 days of cumulative delay that occurred between May 21, 2009, and March 18, 2010, to the state because, during that period, the court had twice set over the case because judges were not available.

The court also attributed to the state the period of delay caused by defense counsel's unavailability between January 6, 2010, and March 18, 2010. At that time, defense counsel was also representing a defendant in another case in Josephine County. The judge presiding over the latter case determined that it took priority over defendant's

case because the defendant in that case had invoked his speedy-trial right, was in the custody of the Department of Corrections but had been transferred to the Josephine County Jail, and, at the time, the jail was operating under a population cap that limited the number of beds available for local inmates. In addition, the defendant in that case had been charged with 24 felonies, there were victims, multiple law enforcement witnesses, and a need for in-court security measures given the defendant's in-custody status. In light of those circumstances, the trial court concluded that the delay caused by the other judge's decision to prioritize defense counsel's other case was attributable to the state.

The trial court then turned to the determination of whether the 566 days (or approximately 18.5 months) of cumulative delay attributable to the state was reasonable under the circumstances of the case. The court began by concluding that defendant had not been brought to trial within a reasonable time. The court then turned to the reasons for the delay, noting that it had taken judicial notice of the case scheduling and docketing processes of the Josephine County Circuit Court and that the state had presented testimony by the court's docket clerk, who testified that "trials are set based on considerations such as the age of the case, judge availability, attorney availability, victim age and status, length of trial, defendant custody status, and whether or not defendant has invoked his or her speedy trial rights." The clerk also testified that "it is the practice of the court to set multiple trials, up to six per day, per trial judge so that the court can fully utilize court resources" and that, generally, there were only two judges available per day to hear cases.

In light of that testimony, the court concluded that,

"other than the one postponement requested by the District Attorney's Office because of witness unavailability, the state delays were based on a combination of docket congestion and a long-standing lack of judicial resources. Defendant does not allege, and the court does not find, that any delay was caused by prosecutorial neglect, misconduct or lack of preparation. The court has taken judicial notice of the fact that this judicial district has an insufficient number of judges to properly hear all trials scheduled. Since this

Court also serves as the Presiding Judge of this district, it is very familiar with the case management and docket practices of this court. This court sets as many as three times as many jury trials as other similarly sized courts around the state. The docketing clerk sets trials based on priority factors such as prioritizing certain types of cases such as juvenile, child welfare and other protective proceedings requiring specific time limitations, in-custody trials over out-of-custody trials, cases involving child and out-of-state witnesses and older cases over newer cases.

"It is the local practice to take into consideration attorney schedules when setting trials and to set multiple trials each day in each courtroom to best utilize judicial and court resources when certain trials cannot go forward for various reasons. When a trial must be reset due to a lack of judicial resources, the case is not placed at the bottom of the list but is given priority after taking into consideration other docketing factors. Every effort is made to take advantage of every 'trial day' so that cases can be heard as expeditiously as possible. This district suffers from insufficient resources to fully comply with the aspirational Oregon Standards of Timely Disposition as adopted by the Oregon Judicial Conference in 1990. This district has four judges, one of whom is dedicated to hear family court matters and one, on any given day, is dedicated to hear routine, procedural matters rather than trials. Therefore, we have only two trial judges available on any given day. Further, although in recent years the Legislature has provided funds for an additional, compensated part-time pro tem judge to assist with case overload, this funding was discontinued one year ago due to severe statewide budget constraints.

"* * * * *

"In the case at bar, the attendant circumstances provide sufficient justification for the delay. The delay was primarily caused by the congested docket (docketing policies) and lack of judicial resources summarized above, not by a lack of the court's attention. Further, although not a determinative factor but one which can be considered, the 18.5 month delay is well within the statute of limitations in this case. * * * Therefore, even though this delay is unreasonable, the Court finds that, as a matter of law, there exist sufficient reasons for such delay. * * * The Court exercises its

discretion under ORS 135.750[2] and orders that the action is continued."

Defendant ultimately was convicted by the jury; this appeal followed.

Defendant argues on appeal that the delay attributable to a lack of judges was "essentially unexplained," because the trial court's findings "did not explain why defendant's particular case was not given priority at the trial settings that were set over." Accordingly, defendant reasons, the total amount of delay in the case was unreasonable and the trial court erred by denying her motion to dismiss. The state replies, first, that the cumulative delay attributable to the state was reasonable in light of the three-year statute of limitations for felonies, and, second, that the delay was adequately explained by the trial court and was not the product of neglect. Neither party takes issue with the trial court's apportionment of the cumulative delay in this case. We likewise conclude that that apportionment is supported by the record, and we adopt it.[3] The striking point in this case, then, is whether the delay attributable to the state was adequately explained and, ultimately, reasonable.

The Supreme Court has set out a process for analyzing a motion to dismiss under ORS 135.747. The first step is to "determine the relevant amount of delay by subtracting from the total delay any periods of delay that [the] defendant requested or consented to." *State v. Glushko/ Little*, 351 Or 297, 305, 266 P3d 50 (2011). The second step is to

---

[2] ORS 135.750 provides:

"If the defendant is not proceeded against or tried, as provided in ORS 135.745 and 135.747, and sufficient reason therefor is shown, the court may order the action to be continued and in the meantime may release the defendant from custody as provided in ORS 135.230 to 135.290, for the appearance of the defendant to answer the charge or action."

[3] We note that the trial court ruled on defendant's speedy trial motion before the Supreme Court decided *State v. Glushko/Little*, 351 Or 297, 266 P3d 50 (2011). In that case, the court held that a failure to appear does not constitute consent to delay under ORS 135.747. *Id.* at 300. In this case, 98 days of delay were caused by defendant's failures to appear. Accordingly, had defendant contested the apportionment of delay in this case, we would have apportioned that delay to the state instead of to defendant, as the trial court did.

determine whether that delay is reasonable, which requires an examination of "all the attendant circumstances." *Id.* at 315-16 (citing *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005)). More specifically, "the circumstances that cause the delay generally will determine whether the delay (and thus, the overall time period for bringing the defendant to trial) is reasonable." *Id.* (quoting *Johnson*, 339 Or at 88) (emphasis omitted).

A delay of 18.5 months is longer than would ordinarily be expected to bring a defendant to trial on felony charges. *See, e.g.*, *State v. Forsyth*, 220 Or App 476, 485, 188 P3d 299 (2008) (explaining that a 21-month delay is "considerably longer than the 15 months that we observed to be generally regarded as excessive"); *State v. Spicer*, 222 Or App 215, 222-23, 193 P3d 62 (2008) (delay of 17.25 months for two counts of felon in possession of a firearm was unreasonable and required reversal under ORS 135.747). Accordingly, we will examine "all the attendant circumstances," *Johnson*, 339 Or at 88, in order to determine whether that delay was unreasonable. "Attendant circumstances" include the reasons for the delay. *State v. Adams*, 339 Or 104, 110, 116 P3d 898 (2005). "There is no precise formula for determining whether a particular delay is reasonable." *State v. Myers*, 225 Or App 666, 674, 202 P3d 238, *rev den*, 346 Or 184 (2009). Generally, "the acceptability of the total delay in a case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be." *Id.* at 677.

Of the 18.5 months of cumulative delay attributable to the state in this case, approximately two months were caused by the unavailability of the state's law enforcement witness. As we recently explained, a two-month period of delay caused by the unavailability of a witness "was reasonable because it was 'the product of the type of scheduling issues that courts and litigants face regularly—delays due to scheduling conflicts by the court and counsel, the unavailability of witnesses.'" *State v. Peterson*, 252 Or App 424, 430, 287 P3d 1243 (2012) (quoting *State v. Allen*, 205 Or App 219, 228, 134 P3d 976 (2006)).

The trial court also attributed to the state the approximately two months of delay caused by another trial judge's decision to prioritize a different case involving another defendant represented by defense counsel. The trial court explained that the trial judge in the other case had made that decision based on the defendant's custody status, overcrowding in the county jail, the number and seriousness of the charges against the defendant, the number of law enforcement witnesses and victims, and the need for in-court security measures. We conclude, in light of the facts that the trial court found, that that period of delay was reasonable. Those facts, which derive from the court's efforts to manage a large, complex trial involving multiple witnesses and serious charged conduct, together constitute a "sufficient reason" to delay defendant's trial that "has some relevance to, and does not essentially undermine, the overall purpose of [the speedy trial] statutes." *Johnson*, 339 Or at 90.

The trial court ascribed the remaining delay attributable to the state—approximately 14.5 months—to the lack of judicial resources in Josephine County. As noted, defendant argues that, notwithstanding the court's findings regarding docket congestion and procedures in Josephine County, those periods of delay were "essentially unexplained" because the trial court did not explain why defendant's case was not given "priority at the trial settings that were set over." We disagree. This is not a case like *Spicer* where the lack of an available judge was simply unexplained. *See* 222 Or App at 222. Here, the trial court set out in detail the reasons why a judge could not have been available for defendant's trial dates: specifically, among the four judges in the district, one was dedicated to handling family law matters and another was dedicated to hearing procedural matters, leaving only two judges available on any given day to preside over trials. That the state did not identify what each of those two judges was doing on a particular day does not render those periods of delay "unexplained." *Cf. State v. Bellah*, 242 Or App 73, 82, 252 P3d 357 (2011) (delay unreasonable where only evidence that delay was caused by lack of judicial resources was OJIN entries of "no judges"); *State v. Lee*, 234 Or App 383, 390-92, 228 P3d 609, *rev den*, 348 Or 523 (2010) (delay reasonable where evidence of lack

of available judges included facts of judges' personal and trial schedules and fact that judges were screened from the case).

This case falls between *Bellah* and *Lee*. As in *Bellah*, the record here does not "disclose how the particular length of each of the *** periods of delay was required by a lack of available judges or whether the court or the state had made a reasonable effort to reset the case for an earlier trial date." *Bellah*, 242 Or App at 84. However, as in *Lee*, the record does reflect particular circumstances that contributed to the delay, namely, recurring systemic factors that caused judges to be unavailable for defendant's reset trial dates: the commitment of one-half of the available judges to fixed, specific dockets on any given day, and the priority given to older cases and juvenile, child-welfare, and in-custody criminal cases as well as the priority given to cases involving child and out-of-state witnesses. That constellation of recurring factors contributing to the lack of available judges distinguishes the record in this case from the record in *Bellah*. In light of the trial court's explanation of the factors contributing to the lack of available judges in Josephine County, we conclude that the residual 14.5 months of delay occasioned by the shortage of judicial resources in this case was reasonable.

From the foregoing, we conclude, as did the trial court, that each of the individual periods of delay attributable to the state was reasonable under the circumstances of this case. However, even where, as here, all of the delays in a case are individually justified, there comes a point at which the total length of the delay attributable to the state outweighs the reasons for it. In *Adams*, for example, the state bore responsibility for 23 months of delay. The state argued that the delay was reasonable because it was caused by a lack of judicial resources. The Supreme Court acknowledged that a lack of judicial resources can justify some trial court decisions to postpone a trial, but it held that the total delay in that case was simply too long to be justifiable on that ground. 339 Or at 111-12. The court explained that, "[a]lthough it is difficult to identify the point at which the delay becomes unacceptable, we think that a delay that roughly equals the statute of limitations at issue is too long." *Id.* at 112. *Adams* was a misdemeanor case, and the

applicable statute of limitations was two years. *Id.* at 112 n 8.

Here, by contrast, defendant was charged with a felony, and the applicable statute of limitations is three years. ORS 131.125(7)(a). Thus, unlike in *Adams*, the total cumulative delay in this case was only slightly more than one-half the length of the statute of limitations. Accordingly, we conclude that this is not a case where the cumulative delay was unreasonable. It follows that the trial court did not err by denying defendant's motion to dismiss.

Affirmed.