Argued and submitted July 10, reversed and remanded December 31, 2014

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

LEON ERWIN WENDT,
*Defendant-Respondent.*

Linn County Circuit Court
09122393; A151974

341 P3d 893

Susan G. Howe, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Andy Simrin argued the cause for respondent. With him on the brief were Andy Simrin PC, Brian D. Cox, and Cox & Associates LLC.

Before Sercombe, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

In this criminal case, defendant moved to dismiss charges against him for first-degree manslaughter, third-degree assault, and driving under the influence of intoxicants (DUII), arguing that the state had violated his right to a speedy trial under *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1,[1] and the state and federal constitutions. The trial court granted defendant's motion. With respect to the DUII charge, the trial court concluded that defendant was "not brought to trial within a reasonable period of time," in violation of *former* ORS 135.747. Because the statute of limitations on the DUII charge had run, the trial court dismissed that charge with prejudice.[2] As to the charges for first-degree manslaughter and third-degree assault, on which the statutes of limitations had not run, the trial court concluded that the state had not administered "justice * * * without delay" as required by Article I, section 10, of the Oregon Constitution, and that defendant had been denied the speedy trial guaranteed to him by the Sixth Amendment to the United States Constitution.[3] Accordingly, the trial court dismissed those charges with prejudice. The state appeals, arguing that the trial court

---

[1] *Former* ORS 135.747 provided:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In 2013, the legislature passed a law that provides, in part, "ORS 135.747 is repealed on April 1, 2014." Or Laws 2013, ch 431, § 1. The repeal provision does not apply to appeals pending in cases in which the trial court granted the defendant's motion to dismiss under *former* ORS 135.747. *State v. Ellis*, 263 Or App 250, 251 n 1, 328 P3d 720, *rev den*, 356 Or 400 (2014) (citing *State v. Straughan (A147718)*, 263 Or App 225, 235, 327 P3d 1172 (2014)).

[2] Although felonies and Class A misdemeanors ordinarily were dismissed without prejudice under *former* ORS 135.747, *State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000), the state could not have retried defendant on the DUII charge (a Class A misdemeanor) because the statute of limitations had run when the trial court ruled on the motion to dismiss. So the court dismissed the DUII charge with prejudice and did not reach the constitutional claims with respect to that charge.

[3] Article I, section 10, provides, in part, "[J]ustice shall be administered, openly and without purchase, completely and without delay[.]" The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

erred in apportioning the delay attributable to the state and assessing the reasonableness of that delay under *former* ORS 135.747 and in determining that defendant had established the prejudice required to prevail on his constitutional speedy trial claims. As explained below, we agree with the state and, accordingly, reverse and remand.

We are bound by the trial court's findings of historical fact when evidence in the record supports them, and we review the trial court's legal conclusions for legal error. *See State v. Johnson*, 342 Or 596, 608, 616, 157 P3d 198 (2007) (explaining, in case involving statutory and constitutional speedy trial claims, that the "trial court's findings of fact concerning the length and reasons for the delay, as well as the type, level, and cause of any anxiety that [the] defendant suffered, are binding if supported by evidence"). We set forth the facts, which are largely procedural, in accordance with that standard.

The state filed an indictment on December 17, 2009, charging defendant with one count of first-degree manslaughter, two counts of third-degree assault, and one count of DUII. The charges stemmed from an incident in the early morning of October 31, 2009. While defendant was driving home after watching a band perform at a bar, the car he was driving collided with another car at an intersection in Lebanon, Oregon, killing a passenger in defendant's vehicle, Spinney, and injuring both passengers in the other vehicle. Defendant was arraigned on December 19, 2009. He posted bail and remained out of custody while his case was pending.

The trial court held a pretrial conference on February 8, 2010, when defendant appeared with counsel for the first time. The court set another pretrial conference for March 8, 2010. That conference, along with conferences set in April, May, and June, were continued at defendant's request.

On the day of the next scheduled pretrial conference, July 12, 2010, defendant filed nine separate pretrial motions.[4] The court scheduled an omnibus hearing for

---

[4] Defendant filed (1) a motion requesting an omnibus hearing; (2) a motion to exclude evidence, which sought exclusion of 22 types of described evidence; (3) a motion to exclude the hospital's analysis of his blood and urine; (4) a motion

September 8, 2010, but that hearing was continued at the state's request, to October 14, 2010. In the interim, defendant filed a tenth pretrial motion, seeking to exclude evidence of defendant's use of marijuana.

At the October 14, 2010, hearing, the court heard evidence on defendant's motions, including testimony from defendant. The hearing could not be completed that day, however, so the court set December 9, 2010, as a second hearing day. The hearing was later rescheduled to January 25, 2011.[5] Defendant then requested that that hearing be rescheduled to February 18, 2011, because defense counsel had a conflict.

On February 18, 2011, the trial court heard testimony from three witnesses: an Oregon State Police forensic scientist, a forensic consultant, and a sheriff's deputy. By the close of the hearing, the trial court had ruled on all of defendant's motions but three, which the court took under advisement.

On May 26, 2011, the court issued an 18-page letter opinion, denying defendant's motion to suppress evidence of the hospital's analysis of his blood and urine, denying the

---

to suppress testimony of his performance of standardized field sobriety tests; (5) a motion to suppress any evidence deriving from the state's warrantless seizure of defendant; (6) a motion to exclude evidence of retrograde extrapolation without proper foundation; (7) a motion to disclose amendments to statements; (8) a motion to disclose impeaching information; and (9) a motion for disclosure of the state's intent to use evidence of prior bad acts.

[5] On appeal, the state asserts that defendant requested to continue the hearing from December 9, 2010 to January 25, 2011. The state apparently relies on a notation in the Oregon Judicial Information Network (OJIN) report, "Set-Over Aty"; that notation was used elsewhere to signify setovers requested by defense counsel for other hearing dates, including the January 25, 2011, hearing. The trial court stated that the delay between December 9, 2010 and January 25, 2011, was attributable to the state and "appear[ed] to be partly neutral because of the court's heavy docket," and the trial court found that "defendant asked for a continuance of the hearing set for January [25], 2011" and concluded that the delay was attributable to defendant.

In light of those rulings, we conclude that the trial court implicitly found that defendant did not request the setover from December 2010 to January 2011. To the extent the state, on appeal, argues that that implicit finding is not supported by the evidence in the record, we need not address that contention. As explained below, even if the delay from December 9, 2010 to January 25, 2011, is attributable to the state, as we assume for purposes of appeal, that delay was not unreasonable under *former* ORS 135.747—either alone or in combination with other unconsented delay.

motion to exclude evidence of the retrograde extrapolation of his blood alcohol content, and granting the motion to exclude evidence of his marijuana use. The parties appeared in court on June 6, 2011. Although court staff had identified several dates between October and December that were available for a week-long trial, the parties selected December 12, 2011, as the date that worked for their witnesses.

The trial did not go forward on that date, however, because of a discovery issue relating to one of the state's trial witnesses, Goad. Goad had seen defendant and Spinney at the bar on October 30, 2009, where they were all watching a band perform. A police officer interviewed Goad on or about November 14, 2009. Goad, who had been watching his wife sing in the band, recalled seeing defendant and Spinney in the bar and recounted what he remembered of defendant's conduct. He also mentioned that he was focused on videotaping the band, using a tripod-mounted camera pointed toward the stage. Goad had not watched the video when interviewed by police and told police that he would watch the video and contact law enforcement if it showed defendant. Goad never communicated with law enforcement about the video, and the prosecutor prepared the state's case without it.

A few days before the December 12 trial date, however, Goad contacted the prosecutor. He informed her that he had recently watched the video footage, which lasted well over three hours, and discovered that it captured a conversation between defendant and Spinney shortly before they left the bar. In that conversation, as the prosecutor described it to the trial court, defendant and Spinney discussed whether, given their alcohol consumption, either of them should drive. The prosecutor immediately informed defendant about the video.

By the time the parties appeared for trial on December 12, as scheduled, however, defense counsel had not been able to view the footage because of the way the video was formatted. Defendant objected to its introduction. The trial court ruled that the state had timely produced the video to defendant but concluded that defendant would be deprived of his right to confront and meaningfully

cross-examine witnesses if the trial went forward.[6] The court gave the prosecutor the option to go forward with her case without the video or move for a continuance to allow defendant time to review it. The prosecutor requested a "brief continuance" to allow defendant the opportunity to review the video.

Given the trial court's crowded docket, the first date that the trial could be rescheduled was in early February 2012. Murder trials were already scheduled for January and February, the court had week-long trials scheduled in March and April, and the court was facing mandatory furlough days and reduction of staff. The parties and the court agreed that the trial would begin February 6, 2012. On December 13, 2011, however, defendant asked to reschedule the trial to the following week in February to accommodate one of his expert witnesses. Because the court's docket was already full for that week, the parties and court staff exchanged several emails in an attempt to set the trial sometime between March and June 2012; they finally arrived at June 26, 2012, as a trial date that worked for the court, the attorneys, and the witnesses.

Before that date, however, defendant filed a motion to dismiss, arguing that the state had violated his statutory and constitution rights to a speedy trial. In its ruling on that motion, the trial court determined that the delay "attributable to the State's requests for continuances, scheduling, and delays for decisions" was over 26 months. As relevant to the parties' arguments on appeal, the court attributed the entire period from July 2010 (when defendant filed his pretrial motions) to May 2011 (when the court ruled on those motions) to the state, except for a 24-day delay when defendant requested to reset a hearing in January 2011.

In assessing the "reasons for the delays," the court did not identify any particular delay that was unjustified or unreasonable. The court noted that the "motions for continuances were all made for good reasons and in good faith."

---

[6] In a separate letter opinion, the court later ruled that the video "was timely disclosed when the prosecutor came into possession [of it] on Thursday, December 8, 2011." The court concluded that the requested continuance by the prosecutor "resolved the issues of confrontation and cross examination."

The court reasoned that approximately 10 of the 26 months attributable to the state "ought to be weighed less heavily" because they were partly caused by the court (*e.g.*, "delay caused by the court's considered decisions or for delays due to the docket"). Other delays, in the court's view, were the result of the state's "tactical decisions." The delay from December 2011 to July 2012, for example, was "charged against the [state] for its decisions concerning the [video]." Ultimately, the court dismissed the DUII charge under *former* ORS 135.747 with prejudice, concluding that the delay attributable to the state was unreasonable.

The trial court also concluded that defendant had established the prejudice required to sustain his constitutional speedy trial claims. Defendant argued that the delay had impaired his ability to present a defense because witnesses from the bar, who defendant's investigator had previously interviewed, could no longer recall certain details about defendant when he was at the bar. Defendant also argued that those witnesses, had their memories not faded, may have helped defendant's investigator identify the not-yet-identified individuals who were heard or seen on the video; those individuals, defendant argued, may have served as favorable defense witnesses. As explained in greater detail below, the trial court determined that defendant was prejudiced by "the evaporation of evidence" and noted "the concern, anxiety, and stress that this action waged on [defendant's] life." Accordingly, the court dismissed the manslaughter and assault charges under Article I, section 10, and the Sixth Amendment. The state now appeals, asserting that the court misapplied the legal standards under *former* ORS 135.747 and the speedy trial provisions of the state and federal constitutions.

We start with the dismissal of the DUII charge under *former* ORS 135.747. Our analysis under that statute begins with a determination of the period of total delay—here, the 952 days from the indictment to the last date set for trial. *See State v. Coulson*, 243 Or App 257, 268, 258 P3d 1253 (2011) (explaining that "the 'clock' for purposes of [*former*] ORS 135.747 starts when a defendant is 'charged with a crime,' *e.g.*, when a defendant is indicted"); *State*

*v. Garcia/Jackson*, 207 Or App 438, 444 n 3, 142 P3d 501 (2006) (explaining that, where trial court granted motion to dismiss, last date set for trial is ending point for analysis under *former* ORS 135.747). From that total delay, we subtract "any periods of delay that defendant requested or consented to." *State v. Glushko/Little*, 351 Or 297, 305, 266 P3d 50 (2011). Then, if the delay that remains (called the unconsented delay or net delay) is longer than to be expected to bring a defendant to trial, we determine whether that unconsented delay is reasonable. *State v. Ellis*, 263 Or App 250, 259-60, 328 P3d 720, *rev den*, 356 Or 400 (2014).

In determining those periods of delay that defendant requested or consented to, we need only consider one period of delay in detail—the period starting July 12, 2010, when defendant filed 10 pretrial motions, to May 26, 2011, when the trial court ruled on those motions. We have explained that, by filing pretrial motions, which require resolution before a trial can be held, a defendant applies for or consents to "a postponement for some reasonable period of time for the trial court to consider and decide them." *State v. Blevins*, 263 Or App 603, 607, 330 P3d 650 (2014) (citing *Glushko/Little*, 351 Or at 313-14; *State v. McGee*, 255 Or App 460, 480, 297 P3d 591, *rev den*, 354 Or 389 (2013)). Here, when defendant filed several pretrial motions on July 12, 2010, an omnibus hearing was set for September 8, 2010. Defendant consented to that 58-day delay, which represents a reasonable amount of time to set an evidentiary hearing and to allow the state to respond to the various motions.

The motion hearing was not held as scheduled, however, and was not completed for several months because (1) the state requested a continuance of the initial hearing date, which was reset for October 14, 2010; (2) the hearing was only partially completed on October 14, so it was set over twice, from October 14 to December 9, and then to January 25, 2011; and (3) defendant requested a continuance of the January 25 date, so the hearing was reset (and completed) on February 18. There is no dispute about the first and last of those delays: defendant did not consent to the delay from September 8 to October 14, but he did consent to the 24-day delay from January 25 to February 18.

With respect to the two setovers from October 14, 2010 to January 25, 2011, the state argues that defendant, by filing pretrial motions, necessarily consented to a reasonable period of delay and that the amount of time for rescheduling—103 days—was reasonable. Defendant responds that he should not be deemed to have consented to such a significant delay, which the trial court identified as partly a result "of the court's heavy docket," simply because he filed pretrial motions that required an evidentiary hearing. We have explained that a scheduling delay for an evidentiary hearing is the *kind* of delay that a defendant consents to by filing pretrial motions. *See Blevins*, 263 Or App at 605, 607 (when the defendant filed pretrial motions, he consented to a delay of just over a month to complete the second day of an evidentiary hearing on those motions). But apart from explaining that a defendant who files pretrial motions consents to a "reasonable" rather than "unlimited" amount of time for the court to consider those motions, *McGee*, 255 Or App at 480, we have not developed a framework for determining at what point an *amount of time* becomes unreasonable under *former* ORS 135.747, especially where, as here, the trial court found that the delay was partly due to docket congestion. We need not explore that question further in this case. Regardless of which party is deemed responsible for the 103-day scheduling delay, the delay by itself was reasonable because the parties and the court were actively trying to fit the evidentiary hearing into the court's crowded docket. Further, even if we assume that the state is responsible for the entire 103-day delay, adding that amount of delay to other periods of unconsented delay does not make the total unconsented delay so long that it is unreasonable *in toto*. For the purposes of this appeal, then, we attribute the 103-day delay to the state.

Once the hearing was completed, the trial court took the motions under advisement and issued an 18-page letter opinion on May 26, 2011. We conclude that, given the complexity of the evidence presented and the distinct issues raised in defendant's various motions,[7] the time it took for

---

[7] In its ruling, the trial court noted that it had ruled on several of defendant's motions in a previous order, but three issues remained: (1) whether evidence of retrograde extrapolation of defendant's blood alcohol content met the standards of admissibility for scientific evidence under both *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995); (2) whether the results of defendant's blood and urine analysis performed by the hospital

the court to issue a ruling on the motions (97 days) was reasonable and, therefore, attributable to defendant. *See McGee*, 255 Or App at 480 (concluding that 26-day delay that a single motion to suppress evidence was under advisement was reasonable); *see also Blevins*, 263 Or at 609 (assuming without deciding that 90 days represented a reasonable amount of time to rule on the defendant's various pretrial motions, in light of the 90-day benchmark for resolving such matters set out in ORS 1.050). Defendant does not argue on appeal that the amount of time it took the trial court to rule on defendant's motions was unreasonable.

We can quickly dispense with allocating the remaining delays between the parties. The only other delay to which defendant consented is the 126-day delay from March 8, 2010 to July 12, 2010, which was the result of continuances requested by defendant. All other delays are attributable to the state:

- *First*, two short delays at the beginning of the case are attributable to the state: (1) the 53-day delay between the indictment and the first pretrial conference on February 8, 2010, was not the product of defendant's consent; and (2) another 28 days of delay, from February 8, 2010, to March 8, 2010, is attributable to the state.[8]

---

should be excluded because it was the result of involuntary consent given during an unlawful seizure; and (3) whether evidence of defendant's marijuana use was admissible when the state's theory was that defendant was intoxicated because of alcohol consumption. To resolve those questions, the court also explained that it had reviewed "the extensive briefing in this case," "the many journal articles" that were submitted by the parties, and the testimony of witnesses, including two forensic scientists.

[8] On appeal, the state argues that the delay from February 8, 2010 to March 8, 2010, should be attributed to defendant because the OJIN report and a hearing transcript show that defense counsel requested a continuance on February 8. In the trial court, however, the state argued that that one-month delay was attributable to the state. In its response to defendant's motion to dismiss, the state noted that February 8, 2010, was the first date that defendant was given "to return" and noted that "defendant appeared with his attorney" for the first time on that date. The trial court, in its letter opinion, specifically relied on the state's allocation of time in attributing that delay to the state. To the extent that allocation reflects legal error, we conclude that the state invited the error. *See State v. Ferguson*, 201 Or App 261, 269, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006) ("[I]f an appellant 'was actively instrumental in bringing about' the error, then the appellant 'cannot be heard to complain, and the case ought not to be reversed because of it.'" (Quoting *Anderson v. Oregon Railroad Co.*, 45 Or 211, 217, 77 P 119 (1904).)).

- *Second,* the delay from May 26, 2011, the date the court ruled on defendant's motions, to the trial date scheduled for December 12, 2011, is attributable to the state. That delay was the product of efforts by court staff to set a date for trial (predicted to last longer than a week) that met the needs of the court, counsel, and witnesses.

- *Third,* the over-seven-month delay between the scheduled trial date, December 12, 2011, and the last set trial date, July 26, 2012, is attributable to the state. The trial date was initially rescheduled to February 6, 2012, at the state's request; the state acknowledges that it is responsible for that delay. Defense counsel then requested that trial be rescheduled to February 13 to accommodate one of his expert witnesses, but the next date that worked for the parties and the court was July 26, 2012. The state argues that defendant consented to the 171-day delay between February 6 and July 26; defendant responds that, at most, he should be responsible for a one-week delay. Given our ultimate resolution of defendant's statutory speedy trial claim, we need not attempt to mark the point, under *former* ORS 135.747, where a delay that defendant initiates becomes so long (or is otherwise affected by matters for which defendant is not responsible, like an overcrowded docket) that it should be considered unreasonable, *i.e.,* beyond the reasonable amount of time to which defendant consented. For the purposes of this appeal, we attribute the 171-day delay to the state.

In total, then, defendant consented to 305 of the total delay of 952 days. The total unconsented delay is 647 days—roughly 21.5 months. Because that delay is longer than to be expected in the prosecution of felony charges, *Ellis,* 263 Or App at 260, we must determine whether that delay is reasonable. We look to "the reasons for the delay, the length of the total delay attributable to the state, and the length of any portion of the delay that was unjustified." *State v. Myers,* 225 Or App 666, 674, 202 P3d 238, *rev den,* 346 Or 184 (2009). Generally, "the acceptability of the total delay

in a case is influenced by the extent to which it is justified." *Id.* at 677. Here, all of the individual periods of unconsented delay were justified:

- *First*, the short unconsented delays leading up to defendant's pretrial motions—the delay between indictment and arraignment and the time it took for defendant to retain and appear with counsel— were routine, justified delays at the start of the case. *See State v. Dixon*, 224 Or App 66, 75, 197 P3d 1106 (2008), *rev den*, 346 Or 10 (2009) (routine delays included "one month from indictment to arraignment, a one-month delay to appoint substitute counsel, and a four-month delay from the first court appearance to the first scheduled trial date"); *State v. Hall*, 265 Or App 279, 284, 335 P3d 311 (2014) (concluding that scheduling delays like those in *Dixon* and other cases "are routine in the early part of a case" and are justified).

- *Second*, the two setovers requested by the state were justified. The first continuance (from September to October 2010) that delayed the first day of the evidentiary hearing was caused by the unavailability of one of the state's witnesses. The second (from December 2011 to February 2012) was the result of the prosecutor's decision to seek a continuance so that defendant could examine the video disclosed to the prosecutor just before the December trial date. The trial court imposed that continuance as a condition for allowing the state to present that evidence at trial, and the prosecutor made a reasonable choice in requesting a short continuance.[9]

- *Third*, the unconsented delays in scheduling and completing the evidentiary hearing on defendant's pretrial motions (from September 8, 2010 to January 25,

---

[9] Although the trial court noted that the prosecutor's request for a continuance was a "tactical choice," the court did not state that the prosecutor's choice was unreasonable, such that the delay caused by his request for continuance should be deemed unreasonable. The trial court did not otherwise determine that the delay caused by the prosecutor's requested continuance was unreasonable because the prosecutor should be faulted for not discovering the evidence on the video sooner.

2011) and in scheduling the trial (from May 26, 2011 to July 26, 2012) were "reasonable because [they were] 'the product of the type of scheduling issues that courts and litigants face regularly—delays due to scheduling conflicts by the court and counsel, the unavailability of witnesses.'" *State v. Peterson*, 252 Or App 424, 430, 287 P3d 1243 (2012) (quoting *State v. Allen*, 205 Or App 219, 228, 134 P3d 976 (2006)).

- *Fourth*, to the extent that docket congestion contributed to the difficulty in scheduling the evidentiary hearing or the trial dates, the trial court offered a detailed explanation of the resource reduction that contributed to the crowded docket and explained that particular pressing matters (*e.g.*, a four-week civil trial in late 2011 and multiple murder trials in early 2012) were taking up space on the docket. *See Hall*, 265 Or App at 285 (explaining that the record must demonstrate how an overcrowded docket contributes to delay). Defendant does not argue otherwise on appeal.

The only remaining question under *former* ORS 135.747 is whether, even though all of the individual delays were justified, the total unconsented delay is so long that it should be deemed unreasonable. As the Supreme Court has explained, "[a]t some point, the focus must shift away from whether the various postponement requests and decisions *individually* are justifiable to whether the overall period of time to bring the defendant to trial is 'reasonable' *in toto*." *State v. Adams*, 339 Or 104, 111-12, 116 P3d 898 (2005) (emphasis in original). In *Adams*, the court compared a justified, unconsented 23-month delay with the two-year statute of limitations for the crime at issue and concluded that "a delay that roughly equals the statute of limitations for the crime at issue is too long." 339 Or at 112.

Where there are multiple charges pending against a defendant, the relevant statute of limitations, for purposes of *in toto* comparison under *Adams*, is that of the most serious charge against the defendant.[10] Here, defendant was

---

[10] *See State v. Lee*, 234 Or App 383, 391, 228 P3d 609, *rev den*, 348 Or 523 (2010) (rejecting the defendant's argument that, under *Adams*, the total

charged with DUII, subject to a two-year limitations period, ORS 131.125(7)(b); third-degree assault, subject to a three-year statute of limitations, ORS 131.125(7)(a); and first-degree manslaughter, subject to no statute of limitations, ORS 131.125(1). Even if we set aside the first-degree manslaughter charge, we conclude that the total unconsented delay of 21.5 months in this case is not roughly equal to the three-year statute of limitations on the other felony charge. *See State v. Hawkins*, 261 Or App 440, 447, 323 P3d 463, *rev den*, 355 Or 880 (2014) (concluding that unconsented delay of 22 months, five months of which were unjustified, was not unreasonable in prosecution of felonies and did "not approach" the three-year statute of limitations for the felonies charged); *State v. Coburn*, 254 Or App 36, 45, 292 P3d 640 (2012) (concluding that unconsented delay of 18.5 months was not unreasonable in prosecution of felony subject to three-year statute of limitations); *Myers*, 225 Or App at 678 (concluding that unconsented delay of 18 months, which was fully justified, was reasonable in prosecution of misdemeanor charge subject to two-year statute of limitations and felony charge subject to three-year statute of limitations). Because all parts of the 21.5-month unconsented delay were justified by the attendant circumstances and because that delay, *in toto*, was not unreasonable under *former* ORS 135.747, we conclude that the trial court erred in granting defendant's motion to dismiss the DUII charge.

We turn to the dismissal of the manslaughter and assault charges under Article I, section 10. Our analysis under that provision follows a similar path to our statutory speedy trial analysis, with a few important detours. We again start with the total delay—the delay between indictment and the last date set for trial—which serves as a "triggering mechanism" for analysis of other factors. *State v. Mende*, 304 Or 18, 23, 741 P2d 496 (1987) (internal quotation

---

unconsented delay should be compared to the two-year period for the two misdemeanor charges against the defendant and explaining that "the relevant statute of limitations *** [was] that for the more serious of the charges against [the] defendant"—a charge subject to a four-year limitations period); *State v. Coburn*, 254 Or App 36, 45, 292 P3d 640 (2012) (explaining that for purposes of *in toto* comparison under *Adams*, the "applicable statute of limitations" was three years, where the defendant was charged with a felony subject to three-year limitations period and a misdemeanor subject to two-year limitations period).

marks omitted). When the total delay is manifestly excessive so as to shock the conscience, no further analysis is necessary; the delay alone may establish an Article I, section 10, speedy-trial violation. At the opposite extreme, if "the delay is not 'substantially greater than the average,' then the state is within constitutional limits and no further inquiry is necessary." *State v. Siegel*, 206 Or App 461, 466, 136 P3d 1214 (2006) (quoting *Mende*, 304 Or at 23-24). In this case, we agree with the parties that the total delay is somewhere in the middle—not so excessive as to shock the conscience, but substantially longer than average—and defendant's Article I, section 10, claim therefore calls for further inquiry. *See, e.g., State v. Fleetwood*, 186 Or App 305, 314, 63 P3d 42, *rev den*, 336 Or 125 (2003) (explaining that the "manifestly excessive" inquiry turns on the nature of the crime charged and the period of pretrial incarceration and concluding that a delay of nine years did not meet that standard where the defendant was charged with "a serious drug crime" and was not incarcerated pending trial).

That further inquiry requires weighing the length of delay with other "factors": the reasons for the delay and the prejudice to the defendant created by the delay. *Harberts*, 331 Or at 88. Under Article I, section 10, "[d]elays caused by [the] defendant obviously do not weigh heavily, if at all, against the state." *Siegel*, 206 Or App at 467. And for delays caused by the prosecutor or the court, we consider whether there is a justification for those delays and whether that justification is reasonable. *See, e.g., Fleetwood*, 186 Or App at 316 (two months that the trial court expended in disposing of the defendant's motion to suppress was reasonable under Article I, section 10); *Siegel*, 206 Or App at 467-68 (delay of over a month due to lack of available judges did not weigh heavily against the state due to its brevity and to the fact that the defendant was not incarcerated). Here, as we have explained above, the individual periods of delay were either justified by the circumstances or were the result of defendant's consent. The trial court did not conclude otherwise in considering defendant's constitutional claims, and defendant does not argue otherwise on appeal.

Defendant's constitutional speedy trial claim, then, rests on his claim that he was prejudiced by the delay. Under

Article I, section 10, defendant has the burden of demonstrating that there is a "reasonable possibility" that he suffered one of three kinds of prejudice: excessive pretrial detention, anxiety and stress resulting from the public accusation of a crime, and impairment of the ability to present a defense at trial. *State v. Emery*, 318 Or 460, 473-74, 869 P2d 859 (1994). In the trial court, defendant acknowledged that he had not suffered the first type of prejudice—excessive pretrial incarceration—but argued that the delay impaired his ability to present a defense and caused him anxiety and concern.

The trial court agreed that defendant had shown that the delay impaired his defense:

> "Defendant argues that he has been prejudiced by the evaporation of evidence. After the prosecutor presented the video tape, [defendant] explained that witnesses identified on the tape can no longer be found. In addition, the recollections of those witnesses who can be found have most assuredly faded with time. The tape, therefore, takes on an unhealthy significance in the minds of those who are aware of it. The ability of Defendant's counsel to confront and cross examine these witnesses has been materially and adversely affected by the passage of time caused by the State's delay in the prosecution of the case.
>
> "While this court does not agree with all of these arguments, there are serious concerns about the reliance of jurors on statements which have the effect of absolute certainty without the testimony which might have mitigated the effect of the video if the case had been timely tried. To this extent, Defendant's arguments are well taken."

On appeal, the parties offer different interpretations of the trial court's conclusion that, because of the delay, defendant was left without "testimony which might have mitigated the effect of the video."[11] The state focuses on defendant's argument that, because of the delay, he could no longer identify

---

[11] The trial court specifically related the loss of witness testimony to the video that Goad presented in December 2011. We understand the trial court to mean that the video was important evidence of defendant's condition at the bar, and defendant could not combat that evidence with testimony from witnesses at the bar whose memories had faded. We note that the prosecutor sought to introduce the conversation between defendant and Spinney—not statements from others heard on the video.

individuals seen and heard on the video who might serve as witnesses and provide testimony favorable to defendant. Defendant does not address the trial court's ruling on appeal, but reiterates that, because of the delay, previously identified witnesses could no longer remember details about what they saw at the bar.

We start with defendant's contention that the delay prevented him from identifying additional favorable witnesses. That argument, as we understand it, rests on the factual theory that (1) if the trial date had been set earlier, Goad could have turned over the video sooner;[12] (2) defendant's investigator could have shown the video to known witnesses many months earlier; (3) those witnesses, several of whom told the investigator in 2012 that "it was much more likely they could have identified people" on the video if they had seen it earlier, could have identified some of the individuals speaking or appearing in the video; and (4) defendant's investigator could then have located those individuals. Beyond demonstrating those facts, though, defendant faced an additional hurdle in demonstrating a reasonable possibility of prejudice: he was required to point to some evidence— something more than mere speculation—as to the *value* of those potential witnesses' testimony. As the Supreme Court has cautioned, "when the value of unavailable evidence is only speculative, the unavailability of that evidence will not factor significantly in the analysis" of prejudice. *Johnson*, 342 Or at 608.

On that point, *State v. Tiner*, 340 Or 551, 557, 135 P3d 305 (2006), is illustrative. There, the defendant argued that a delay impaired his defense because a potential witness who had died during the delay "might have testified that a gun sold to [the defendant's friend] (and transferred to [the] defendant) was of a different caliber than the weapon that had killed [the] victim." The court concluded that the loss of that potential witness did not cause a reasonable possibility of prejudice. In the court's view, "[t]he gun-sale witness's

---

[12] The parties' trial preparation in December 2011 apparently caused Goad to review the video. The trial court noted that "[a]pparently" a conversation between Goad and defendant's investigator just before trial "prompted [Goad] to review the [video] and he brought [it] to the prosecutor * * * just prior to the trial set for December 12, 2011."

potential testimony was speculative" because the defendant "never located him and, above all, never determined what he might have had to say." *Id.* at 558. The Supreme Court reached the same result in *Johnson*, where the defendant argued that, because his aunt had died while his case was pending, he could not present her testimony during the penalty phase of his trial. 342 Or at 614. The defendant acknowledged that "[i]t is not possible to know what she might have said," but argued that "it is highly likely that [she] would have had something kind to say." *Id.* (internal quotation marks omitted; alterations in original). The Supreme Court concluded that speculative testimony of that sort was not enough to establish a reasonable possibility of prejudice.

Here, defendant presents the same kind of speculation that the court rejected in *Tiner* and *Johnson*. The unidentified individuals on the video are potential defense witnesses only because they were at the bar at some point over a three-hour period on October 30, 2009. But defendant had already identified several witnesses from the bar—the bar staff, members of the band, and other bar patrons who defendant talked to—as part of his investigation. Defendant made no showing that others (who could be seen or heard on the video but had not yet been identified) had any interaction with defendant on the night in question. Nor did defendant show that those individuals otherwise would have observed defendant closely enough to provide relevant testimony, let alone testimony that would be helpful to defendant. Even if we assume that the delay prevented defendant from locating additional individuals at the bar, defendant's assertion that those individuals would provide favorable testimony rests on speculation and is therefore insufficient to establish a reasonable possibility that his defense was impaired.

Defendant's alternative argument—that previously identified witnesses, "had their memories not faded significantly, could have corroborated details of Defendant's testimony"—fares no better. Although the witnesses at the bar generally stated that they did not remember that anyone at the bar was intoxicated, defendant claims that, without the delay, those witnesses "could have confirmed that Defendant was only served two drinks that night," "that Defendant did not drink on an empty stomach," or that

there was nothing about defendant's actions "to suggest he was impaired in any way." But, in the trial court, defendant did not explain whether any of the previously identified witnesses—described by defendant's investigator as "including the two bartenders on duty on the night in question, two of the band members playing that night, [and] a regular patron"—were in a position to notice those particular details. For example, the two bartenders told defendant's investigator that they were "monitoring the crowd to make sure no one was intoxicated," but we do not know if they had any interactions with defendant while he was sitting at a table watching the band or if they had any reason to know specifically what he drank and ate throughout the night. Further, although defendant's investigator stated in an affidavit that "[m]any of [the] witnesses were unable to recall specific facts and circumstances important or potentially-important to this case," defendant did not identify any of those forgotten "facts and circumstances." Defendant apparently had that information: the investigator explained that she previously interviewed the witnesses sometime after the incident and that, in 2012, those witnesses could not recall "information they were previously able to provide in their prior interview[s]." But defendant did not describe what information those witnesses had provided to the private investigator previously, and as a result there is no way to determine whether the earlier statements are materially different—and more beneficial to defendant's case—than their statements in 2012.

Ultimately, all defendant established is what is "[u]ndoubtedly" true in every case where there has been pretrial delay: "witnesses *could have* remembered events more clearly at a time nearer to [when defendant was charged]." *Emery*, 318 Or at 474 (emphasis added). Defendant did not show, as he must, "specifically how his ability to defend himself was prejudiced by the faded memories." *Id.* Accordingly, he failed to demonstrate a reasonable possibility that his defense was impaired.[13]

---

[13] To the extent that defendant also claims that his defense was impaired because defendant's investigator was unable to locate a single previously identified witness, that claim, too, requires too much speculation to establish a reasonable possibility of prejudice. Defendant notes that his private investigator was unable to contact a previously interviewed witness, but he does not identify the

We turn, finally, to the trial court's observation that defendant suffered anxiety and stress as a result of his prosecution. Although we do not question the trial court's factual finding, the controlling question is whether defendant "established a *degree* of prejudice" that, when evaluated together with the reasons for delay and the length of pretrial incarceration, "warrants dismissal." *Siegel*, 206 Or App at 470 (emphasis added). Here, defendant argued that he had not been able to seek out "certain kinds of employment," he had not been able to travel on his sailboat, and he had been unable to maintain a relationship with Spinney's daughter. In other words, he cited nothing "beyond that expected when someone is, or might be, the subject of a criminal charge." *State v. Bayer*, 229 Or App 267, 281, 211 P3d 327, *rev den*, 347 Or 446 (2009) (concluding that the defendant had not established a speedy trial violation under Article I, section 10).

That degree of anxiety and concern, though real, is not enough to support dismissal in a case such as this, where defendant did not demonstrate impairment of his defense, the delays in this case were reasonable, and defendant was not incarcerated pretrial. *See, e.g., Emery*, 318 Or at 473-74 (concluding that two-year, unjustified pretrial delay on citation for illegal possession of a game animal caused anxiety and inconvenience but was insufficient to require dismissal under Article I, section 10); *Fleetwood*, 186 Or App at 319-22 (accepting the trial court's finding that the defendant suffered prejudice in the form of substantial stress and anxiety, lost opportunity for travel, and stress in his personal relationships, but concluding that the defendant was not entitled to dismissal, where the delay was justified, the defendant suffered no actual prejudice to his ability to present a defense, and the defendant was not incarcerated before

witness, the substance of that witness's recollection of October 30, 2009, whether that recollection was helpful to defendant, or whether that witness's recollection was in any way different from the several other witnesses. Defendant's reference to unspecified testimony of an unidentified missing witness does not aid his prejudice claim. *See, e.g., State v. McDonnell*, 343 Or 557, 574-75, 176 P3d 1236 (2007) (rejecting the defendant's claim that, as a result of delay, he suffered prejudice in a death penalty sentencing proceeding because several character witnesses had died, where "the record contain[ed] no evidence confirming that the deceased persons would have supplied any useful information or, particularly, that the information would support [the] defendant's arguments against a sentence of death").

trial); *see also State v. Harman,* 179 Or App 611, 620, 40 P3d 1079 (2002) (explaining that "nominal weight of [anxiety and stress] factors generally will not overcome the absence of either lengthy pretrial incarceration or meaningful prejudice to the defense").

In sum, none of the factors that come into play under our Article I, section 10, analysis support the conclusion that the state violated defendant's right to a speedy trial.[14] The trial court erred in granting defendant's motion to dismiss the manslaughter and assault charges on that basis.

Reversed and remanded.

---

[14] Defendant's speedy trial claim under the Sixth Amendment fails for the same reasons. *See McDonnell,* 343 Or at 575 (rejecting the defendant's arguments under the Sixth Amendment where the defendant "failed to demonstrate that the delay in his death penalty proceedings has created a reasonable possibility of prejudice" under Article I, section 10); *see also Johnson,* 342 Or at 606-07 (noting that state and federal speedy trial guarantees are "similar" but not "identical").