252 November 26, 2025 No. 1021

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEBRA ELIZABETH FERY,
*Defendant-Appellant.*

Marion County Circuit Court
18CR62659; A178795

Daniel J. Wren, Judge.

Submitted April 30, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Debra Fery filed supplemental briefs *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment convicting her of one count of computer crime, ORS 164.377(2)(c), asserting six assignments of error. She argues for the first time on appeal that the state did not produce sufficient evidence that she acted with the requisite mental state to permanently deprive an entity of its property, as necessary to establish a computer crime. Next, she challenges the trial court's denial of her motions to suppress, arguing that she was in compelling circumstances requiring *Miranda* warnings when her employer, Oregon State Police (OSP), questioned her about a thumb drive she had connected to its computer. Defendant also challenges the trial court's denial of her motion to dismiss for lack of a speedy trial, arguing that she was prejudiced by the nearly three-year delay, almost none of which was attributable to her actions. Finally, in a *pro se* supplemental brief, defendant argues that the introduction of extrinsic evidence, an incorrect verdict form, into jury deliberations violated her Sixth Amendment right to a fair and impartial jury. We conclude that defendant did not preserve her argument as to the motion for judgment of acquittal, that she was not in compelling circumstances during questioning about the thumb drive, that the trial court did not err in denying her motion for a speedy trial, including because she did not demonstrate prejudice from the delay, and that she was not deprived of her right to a fair and impartial jury. Accordingly, we affirm.

Defendant was placed on administrative leave from her job in OSP's Department of State Police, IT & Technology Implementation Division, after she filed several complaints against her employer, including allegations of fraud, general mismanagement, and sexual harassment. After being placed on leave, defendant requested records that would cost her $1,685 to obtain. Ultimately, OSP agreed to a process by which defendant could access and categorize electronic materials to support her claims via an OSP-issued computer. The process terms included that defendant was prohibited from "remov[ing] any printed documents or electronic storage media containing information developed during this search process."

Lieutenant Shugart supervised defendant's investigation in a room at the Oregon Public Safety Academy. Defendant was not allowed to move around the building without an escort while conducting her investigation. During the last of four sessions, Shugart spotted a thumb drive inserted into the computer that defendant was using. He asked her about it, and she denied knowing anything about it and removed it from the computer, placing it on the table. Later, Shugart noticed that the thumb drive was missing from the table and spotted it in defendant's hand under the table. He asked her to give him the thumb drive, and she did so without hesitation and admitted that it belonged to her.

Shugart called his captain to report what had happened before returning to the room to ask defendant to show him the files she had copied to her thumb drive. He also asked her why she had copied those files, and she responded that they were public information that she would have gotten through her records request had she paid for it. After Shugart copied all the files back into a folder on the computer's desktop to maintain them in case anything happened to the thumb drive, defendant continued reviewing agency files for over an hour. During that time, detectives asked defendant questions about the thumb drive. As she was leaving, defendant asked Shugart to return her thumb drive, but he had already given it to the other detectives.

Defendant was charged with and eventually convicted of one count of computer crime, ORS 164.377(2)(c). The proceedings lasted nearly three years due to various setovers, motion hearings, and court delays that were likely attributable, at least in part, to the COVID-19 pandemic. Defendant moved to suppress statements made during her conversation with Shugart, to dismiss for lack of a speedy trial, and for a judgment of acquittal. On appeal, defendant challenges the denial of all those motions.

We begin with defendant's challenge to the denial of her motion for judgment of acquittal. She asserts a basis for acquittal on appeal that she did not assert below: that the state failed to adduce sufficient evidence of her intention to permanently or virtually permanently deprive OSP of property. Though she did not preserve that argument, she

does not ask for plain error review, and we do not exercise discretion to undertake such review. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so because 'it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error.'" (Quoting *State v. Tilden*, 252 Or App 581, 589, 288 P3d 567 (2012).)).

We next address defendant's challenge to the trial court's denial of her motion to suppress, which we review for errors of law and are bound by the court's factual findings that are sufficiently supported by the record. *State v. Nelson*, 285 Or App 345, 346, 397 P3d 536 (2017). We review "the question whether a particular setting amounts to full custody or is otherwise 'compelling' for errors of law, accepting the trial court's findings of historical fact as long as there is evidence in the record to support them." *State v. Bush*, 203 Or App 605, 608, 126 P3d 705 (2006). In determining whether circumstances are compelling thus requiring that warnings be given, we consider the totality of the circumstances, paying particular attention to the location of the encounter, the length of the encounter, the amount of pressure exerted on the defendant, and the defendant's ability to leave or otherwise terminate the encounter. *Nelson*, 285 Or App at 350. Our analysis is dependent upon how "a reasonable person in the suspect's position would have understood his or her situation." *State v. Shaff*, 343 Or 639, 645, 175 P3d 454 (2007).

In urging that her statements should have been suppressed, defendant contends that Shugart questioned her in a secure conference room operated by OSP after he witnessed behavior that likely was sufficient to establish probable cause and emphasizes her status as an employee on administrative leave that needed to be escorted around the building. She argues that those circumstances would cause a reasonable person to feel compelled to answer Shugart's questions. We disagree and conclude that the circumstances of defendant being questioned by Shugart were not compelling.

Questioning someone suspected of a crime is typically not enough to establish circumstances deemed compelling for these purposes, "'even when an officer reveals [their] suspicions of criminal activity after conveying to a defendant that [they are] not free to leave.'" *State ex rel City of Pendleton v. Woodell*, 338 Or App 85, 89, 565 P3d 80, *rev den*, 373 Or 815 (2025) (quoting *Nelson*, 285 Or App at 351). Here, while Shugart later testified that he suspected defendant had committed a crime, he did not expressly confront defendant with evidence of probable cause. *See State v. McMillan*, 184 Or App 63, 68, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003) (noting that, although an officer's unarticulated suspicions do not result in compelling circumstances, expressly confronting a suspect with evidence of probable cause to arrest may make the circumstances sufficiently compelling to require *Miranda* warnings). Instead, Shugart asked questions related to defendant's potential violation of the terms of the investigation process relating to her claims against her employer. *Cf. Woodell*, 338 Or App at 89 (holding that circumstances were not compelling even when the officer suspected the defendant of driving while intoxicated because the officer did not confront the defendant with evidence to make an arrest). In addition, the questioning itself only lasted a few minutes and did not involve raised voices or intimidating body language. And, although defendant was asked questions in a setting where presumably many police were present, it was also her place of work, and it was not police-dominated in the context of investigating her suspicious activity.

We are similarly not persuaded by defendant's argument that she did not feel free to terminate the encounter because she required an escort. After Shugart asked his questions and confiscated the thumb drive, defendant chose to stay and continue her investigation for over an hour before leaving. Her limited freedom of movement was unrelated to her conduct and remained consistent with prior visits. Thus, defendant was not in compelling circumstances requiring warnings, and the trial court did not legally err in denying defendant's motion to suppress.

We next address the trial court's denial of defendant's motion to dismiss for lack of a speedy trial, which

we review for errors of law. *State v. Gill*, 192 Or App 164, 168, 84 P3d 825 (2004), *abrogated on other grounds by State v. Baranovich*, 254 Or App 98, 103, 295 P3d 58 (2012). We are again bound by the trial court's findings of fact if the record supports them. *State v. Stinnett*, 291 Or App 638, 639, 422 P3d 372 (2018). Article I, section 10, of the Oregon Constitution ensures defendant's right to a speedy trial.[1] To determine whether a defendant's right to a speedy trial was violated, we consider the length of the delay, the reasons for the delay, and whether the defendant was prejudiced by the delay. *State v. Emery*, 318 Or 460, 472, 869 P2d 859 (1994). If the delay was excessive to the point that it shocks the conscience, the length of the delay alone is enough to establish a violation of a defendant's right to a speedy trial. *State v. Wendt*, 268 Or App 85, 100, 341 P3d 893 (2014). If the delay is not manifestly excessive but substantially longer than average, then the "inquiry requires weighing the length of delay with other 'factors': the reasons for the delay and the prejudice to the defendant created by the delay." *Id*.

We conclude that the trial court did not err in denying defendant's speedy trial motion. The 35-month delay in this case, only 15 months of which was attributable to the state, was largely justified given the amount of pretrial litigation and the unexpected delays due to the COVID-19 pandemic. *See, e.g.*, *State v. Blevins*, 263 Or App 603, 607, 330 P3d 650 (2014) ("By filing those motions, which required resolution before a trial could be held, defendant applied for or consented to a postponement for some reasonable period of time for the trial court to consider and decide them."). In line with the trial court's reference to the Chief Justice of the Oregon Supreme Court's directive to reset trials for out-of-custody defendants, we have previously held that delays may be reasonable when they are attributable to judicial resources and routine scheduling. *State v. Myers*, 225 Or App 666, 677, 202 P3d 238, *rev den*, 346 Or 184 (2009). The delays are similarly justified here.

In addition, we agree with the state's assertion that defendant did not establish that she was unduly prejudiced

---

[1] Defendant's arguments under the Sixth Amendment to the United States Constitution do not differ meaningfully from her arguments under Article I, section 10, and thus do not call for a different analysis.

by the delay in this case, given that she did not face pre-trial incarceration and given the trial court's finding that she did not prove that she experienced a level of anxiety beyond the ordinary stress of the charge that any defendant would face. *See State v. Harman*, 179 Or App 611, 620, 40 P3d 1079 (2002) (noting that, to warrant dismissal based on prejudice due to undue anxiety and public suspicion, the court must find that defendant's anxiety goes beyond the "ordinary stress and anxiety that accompanies any criminal prosecution"). Thus, balancing the justifications against the prejudice experienced by defendant, we conclude that the trial court did not err in denying defendant's motion to dismiss for lack of a speedy trial. We summarily reject defendant's arguments under the Sixth Amendment to the United States Constitution because the analysis does not significantly differ. *See Wendt*, 268 Or App at 106 (doing the same).

Lastly, we address defendant's *pro se* assignment of error challenging the trial court's overruling of defendant's objection to the introduction of "extrinsic evidence" in the form of an incorrect jury verdict form that mistakenly included a crime for which defendant was not charged. Defendant argues that the incorrect verdict form prejudiced the jury against defendant, which violated defendant's Sixth Amendment right to a fair and impartial jury. We conclude, however, that any error was harmless given the trial court's introduction of a corrected verdict form, and written explanation for the error and instruction to disregard the incorrect verdict form. *See State v. Shinnick*, 288 Or App 847, 848-49, 407 P3d 877 (2017), *rev den*, 362 Or 794 (2018) ("We need not address whether the trial court erred in admitting the evidence, because we conclude that any error was harmless, given the trial court's instruction."). Thus, the trial court did not err.

Affirmed.